[Civ. No. 2256. Third Appellate District.—May 24, 1921.]

THE PEOPLE ex rel. J. C. WILLIAMSON et al., Respondents, v. JOHN RINNER et al., Appellants.

[1] CONSTITUTIONAL LAW—PRESUMPTION AS TO LEGISLATIVE POWER.— There is no implication of the absence or nonexistence of legislative authority or power and whoever would claim that the power in any instance does not exist must point out the provision of the constitution which has taken it away or forbidden its exercise.

[2] STATUTORY CONSTRUCTION—VALIDITY OF REPEALING ACT.—In view of article IV, section 1, of the constitution, which vests the legislative power of the state in the legislature, and in view of the principle that the constitution is not to be considered as a grant of power, but as a restriction upon the powers of the legislature, an act repealing another act must be rendered effective unless inhibited by some express provision of the constitution or manifestly against sound public policy.

[3] SCHOOLS — REPEAL OF ACT CREATING DISTRICT — CONSTITUTIONAL LAW—PROHIBITION OF CREATION OF MUNICIPAL CORPORATIONS BY SPECIAL LAWS—INAPPLICABILITY OF PROVISION.—The act of the legislature approved May 5, 1919, repealing the act approved March 30, 1878, creating the Courthouse School District of Sonoma County, is not inhibited by section 6, article II, of the constitution, which prohibits the creation by special laws of corporations for municipal purposes and which provides for the incorporation, organization, and classification, in proportion to population, of cities and towns, by general laws, since the direct object of the repealing act was not to create, but to dissolve and terminate, a district, and since a school district is not a municipal corporation.

[4] ID.—PROHIBITION AGAINST PASSAGE OF SPECIAL LAWS—REQUIREMENT OF OPEN SCHOOL—PROVISIONS NOT VIOLATED.—The act of the legislature approved May 5, 1919, repealing the act approved March 30, 1878, creating the Courthouse School District of Sonoma County, is not in conflict with subdivision 33, section 25, article IV, of the constitution, which prohibits the passage of special laws where a general law can be made applicable, nor is it in conflict with section 5, article IX, of the constitution, which declares that the legislature shall provide a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, since such act is not a creative or amendatory act, but a repealing act.

[5] ID.—ACT NOT AGAINST PUBLIC POLICY—STATUS OF TERRITORY OUTSIDE MUNICIPAL LIMITS.—The act of the legislature approved May 5, 1919, repealing the act approved March 30, 1878, creating the Courthouse School District of Sonoma County, which district em-

braced what now constitutes the city of Santa Rosa and some adjacent territory outside the corporate limits thereof, was not in violation of public policy in that it left such outlying territory without any legal status as a school district, since the general law immediately became operative creating Santa Rosa School District with boundaries coextensive with the city limits and leaving the outlying territory subject to the authority of the board of supervisors as provided in subdivision 2 of section 4041 of the Political Code.

[6] Id.—Curative Acts—Validity of Repealing Act Unaffected.—The validity of the act of 1919 repealing the act of 1878 creating the Courthouse School District of Sonoma County is not affected by section 1724 of the Political Code or by the act approved March 18, 1905, curing irregularities in the formation of school districts previously organized but not creating any district or affecting the repeal of any special statutes.

[7] Id.—Quo Warranto—Ouster of Trustees of Abolished District—Findings—Appeal.—In a *quo warranto* proceeding to oust the trustees of a school district which the relators claimed had been abolished by the repeal of the legislative act creating the district, the failure to find on certain special defenses set up in the answer can be of no avail to the defendants on appeal, where the findings are sufficient to support the judgment and the evidence is not produced.

[8] Constitutional Law—Validity of Statute—Duty of Courts.—A court must move with great caution in declaring an act of the legislature unconstitutional, resolve all doubt in favor of its validity, and hold it unconstitutional only in cases where the act is plainly and palpably violative of the constitution.

APPEAL from a judgment of the Superior Court of Sonoma County. George H. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Hoyle for Appellants.

Carl Barnard, U. S. Webb, Attorney-General, and Russell P. Tyler for Respondents.

BURNETT, J.—The appeal is from a judgment in favor of the plaintiffs. The action was in *quo warranto* to have it adjudged that defendants were usurping and improperly exercising the office of trustees of Courthouse School District in the county of Sonoma. This district was created by a special act of the legislature in 1878 (Stats. 1877–78,

p. 752) and embraced what now constitutes the city of
Santa Rosa and some adjacent territory outside the cor-
porate limits thereof. In 1919 (Stats. 1919, p. 239) the
legislature repealed the said act of 1878 creating said dis-
trict. At the time of said repeal, and for some time prior
thereto, the defendants were the duly acting and qualified
trustees of the said Courthouse School District and they
claim that their right to said office has not been affected
for the reason that said attempted repeal of said act of
1878 was and is invalid. As to this vital consideration
the court's finding is: "That it is true that the act of the
legislature of 1919 of the state of California approved May
5, 1919, which repealed the said act of the legislature of the
state of California of 1878 approved March 30, 1878, is now
and at the time of the filing of the complaint in this action
was in full force and effect and it is true that the said
Courthouse School District, County of Sonoma, ceased to
exist after the taking effect of the said act of the legislature
of 1919, repealing the said act of the legislature of 1878."

In the determination of the validity of said repeal act the
plenary power of the legislature where not circumscribed by
the constitution must, of course, be regarded. [1] The
principle is not disputed that there is no implication of the
absence or nonexistence of legislative authority or power
and that whoever would claim that the power in any in-
stance does not exist must point out the provision of the con-
stitution which has taken it away or forbidden its exercise.
(*In re Madera Irr. Dist.*, 92 Cal. 296, [27 Am. St. Rep.
106, 14 L. R. A. 755, 28 Pac. 272, 675]; *Sheehan* v. *Scott*,
145 Cal. 684, [79 Pac. 350].)

This follows, from the provision of the constitution itself
(art. IV, sec. 1) that "the legislative power of this state
shall be vested in a senate and assembly which shall be
designated 'the legislature of the State of California,'"
and from the application of the admitted principle that
"the constitution is not to be considered as a grant of
power, but rather as a restriction upon the powers of the
legislature." [2] Of course, we are not concerned herein
with the reservation by the people of the authority embraced
in the *initiative* and *referendum*, but, concededly, said act
of repeal must be rendered effective unless inhibited by some

express provision of the constitution, or unless manifestly against sound public policy.

[3] The only provision which is invoked as so operative is section 6, article XI, providing: "Corporations for municipal purposes shall not be created by special laws; but the legislature shall, by general laws, provide for the incorporation, organization, and classification in proportion to population, of cities and towns, which laws may be altered, amended or repealed. . . . Cities and towns heretofore organized or incorporated may become organized under the general laws passed for that purpose, whenever a majority of the electors voting at a general election shall so determine, and shall organize in conformity therewith. Cities and towns hereafter organized under charters framed and adopted by authority of this Constitution are hereby empowered, and cities and towns heretofore organized by authority of this Constitution may amend their charters in the manner authorized by this Constitution so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." No extended consideration of this provision is required, since the language is simple and perspicuous and its interpretation has been the subject of discussion in many decisions of the appellate courts of the state. It may be remarked, however, that it would seem to be an unnatural and strained construction to hold that it has any application whatever to a school district.

If it might be said that a school district is a "corporation for municipal purposes" and therefore subject to the first clause of said provision, it is doubtful whether it would be of any avail to appellants. The primary and direct object of the act of repeal was not to *create* a district, but to dissolve and terminate it. The district having been created by the act of 1878 when special laws were not prohibited by the constitution, the act in controversy releases said district from the operation and effect of a *special* law and makes it subject to the *general law*. It must be admitted, though, that, in consequence of subjecting said territory to the operation of the general law, said repeal re-

sults indirectly in the creation of the two districts where one existed before, and there is force in the contention of appellants that said repeal does in effect create a new district.

However, this point is not necessary to the decision, as it is apparent that in said provision the people have clearly limited the term, "corporations for municipal purposes" to those relating to and included in "cities and towns," and it would not be claimed, of course, that Courthouse School District is a city or town, although it does include the city of Santa Rosa. The school district is admittedly a totally distinct entity from the municipal corporation of Santa Rosa. Manifestly, the residue of said provision can afford appellant no comfort, since it is clearly confined to "*cities* and *towns* heretofore organized," etc., and· "*cities* and *towns heretofore* and *hereafter* organized."

The authorities cited by appellants have reference to an entirely different situation as will readily be appreciated. In *Desmond* v. *Dunn*, 55 Cal. 242, the question was whether the so-called McClure charter for the city and county of San Francisco was constitutional and operative. *Donahue* v. *Graham*, 61 Cal. 276, involved the validity of the act of April 1, 1872, relating to street improvements in San Francisco. *Ex parte Helm*, 143 Cal. 553, [77 Pac. 453], had to do with a license tax imposed by the town of Santa Clara. These cases and some others that are cited in the brief of appellants involved directly the construction of said constitutional provision, but, for the reason before stated, they are hardly in point here. As stated by the learned trial judge in his opinion filed in the case: "Obviously, the Courthouse School District was not a 'city' or a 'town'; consequently it did not come within the specific provisions of said section for reorganization of towns and cities under the general law."

Moreover, if we disregard the apparently strict limitation of said provision to "cities and towns" and by judicial construction stretch the language so as to include all *municipal corporations,* or *corporations* for municipal purposes, we shall fall short of meeting appellants' necessities. This follows for the reason that a school district is not, strictly speaking, a *municipal corporation.* It is true that for certain purposes in some decisions a school district has

been considered as constituting a municipal corporation, as in *Horton* v. *Mobile School Commrs.*, 43 Ala. 598, and *Curry* v. *District Township of Sioux City*, 62 Iowa, 102, [17 N. W. 191]. It is claimed also by appellants that a school district is so recognized in section 30, article IV, of our constitution, providing that "neither the legislature, nor any county, city and county, township, school district, or *other* municipal corporation shall ever make," etc. This contention hinges manifestly upon the use of the word "*other*." As to this, though, it may be stated that a school district is classified with a county, and it has been expressly held in this state that a *county* is not a municipal corporation within the meaning of section 6 of article XI of the constitution. (*People* v. *McFadden*, 81 Cal. 489, [15 Am. St. Rep. 66, 22 Pac. 851]; *Kahn* v. *Sutro*, 114 Cal. 316, [33 L. R. A. 620, 46 Pac. 87]; *County of San Mateo* v. *Coburn*, 130 Cal. 632, [63 Pac. 78, 621].)

The weight of authority is, indeed, to the effect that a school district is not a municipal corporation. In section 22 of Dillon on Municipal Corporations, it is said: "Corporations intended to assist in the conduct of local civil government are sometimes styled *political*, sometimes *public*, sometimes *civil*, sometimes *municipal*, and certain kinds of them with very restricted powers, *quasi*-corporation,—all these by way of distinction from *private* corporations. All corporations intended as agencies in the administration of civil government are *public*, as distinguished from private corporations. Thus an incorporated school district, or county, as well as city, is a public corporation; but the school district or county, properly speaking, is not, while the city is a *municipal* corporation."

The school district is a necessary political division of the county under the direction and supervision of the local authorities for the promotion of the general educational purposes of the state, the system being a matter of general concern and "not a municipal affair." (*Hancock* v. *Board of Education*, 140 Cal. 554, [74 Pac. 44]; *Malaley* v. *City of Marysville*, 37 Cal. App. 638, [174 Pac. 367].) However, as before stated, this question is not of decisive moment herein.

[4] We can see no merit in the claim of appellants that said repeal is in conflict with subdivision 33, section 25,

article IV, or section 5, article IX, of the constitution. The first of these provides: "The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say. . . . Thirty-third. In all other cases where a general law can be made applicable."

The latter is: "The legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established." The contention of appellants based upon these constitutional provisions is completely answered by the suggestion of the trial judge "that we are dealing with a *repeal*, not with any *creative* act, or with any amended act; and that the said provisions of the constitution contain no restriction in terms against repeal." In his opinion attention is called to *State* v. *Prather*, 84 Kan. 169, [36 L. R. A. (N. S.) 1084, 112 Pac. 829], wherein it is said: "The adoption of a constitutional provision against special legislation does not prevent the repeal by special act of a special law previously enacted or its partial repeal, where the effect is merely to withdraw from the operation of the special law and make subject to the general law."

*People ex rel. Rogerson* v. *Crawley*, 274 Ill. 139, [113 N. E. 119], involved the validity of the repeal of the charter of the city of Jacksonville and the court held that it was not violative of the constitution, article IV, section 22, providing that "the general assembly shall not pass local or special laws for incorporating cities, towns or villages, or changing or amending the charters of any city, town or village and providing for the management of common schools since it is the substance and not the form that determines the constitutionality of an enactment, and the special purpose of the provision was to discourage dissimilarity and to promote and encourage legislation uniform on all subjects referred to, and the act tends to promote uniformity in the organization of incorporated cities and in the management of their schools." In that case the court issued a writ of mandate requiring the defendants to organize under the general law the school district that had been released from the provisions of the special statute.

A Michigan case in line with the foregoing is *Attorney-General ex. rel. Kies* v. *Lowrey*, 131 Mich. 639, [92 N. W.

289]. Therein the legislature consolidated into one school district lands which had been previously divided among several, the said new district not including all the lands comprised in the several districts from which it was organized, and the act further provided (among other things) that the school inspectors of the township should attach to other school districts the portions of the several districts not included in the new. It was held by the supreme court that the act did not violate the constitutional provision requiring the legislature "to provide for and establish a system of primary schools whereby a school shall be kept without charge for tuition at least three months in each year in every school district in the state."

In discussing the validity of certain legislative acts repealing the charter of the city of Memphis the supreme court of Tennessee, in *Luehrman* v. *Taxing Dist.*, 2 Lea (Tenn.), 425, said: "The prohibition of the constitution is against the creation or the increase or diminution of the powers of a corporation by special law, and the direction is to provide by general laws 'for the organization of all corporations hereafter created.'" But it was declared that this did not prohibit the legislature "from repealing, at any time, the corporate privileges of a particular community, whether organized previous or subsequent to the adoption of the constitution. This is a power so essential to sovereignty and the preservation by the state of its control over its instrumentalities of local rule, that it cannot well be considered as cut off except by a positive provision to that effect. The restriction is against the powers being 'diminished' by special laws, not against their entire abolishment." To the same effect are other cases cited by respondents, among them being *State ex rel. Worthley* v. *Steen,* 43 N. J. L. 542; *Central Wharf etc. Co.* v. *City of Corpus Christi,* 23 Tex. Civ. App. 390, [57 S. W. 982]; *City of Oak Cliff* v. *State* (Tex. Civ.), 77 S. W. 24; *South Morgantown* v. *City of Morgantown,* 49 W. Va. 729, [40 S. E. 15].

It is indeed quite apparent that the repeal of a special act creating a school district and thus making it subject to the general law on that subject not only does not interfere with but it tends to promote the constitutional scheme for a general educational system. It is likewise apparent that it would be impracticable, if not impossible, by means of a

general law to accomplish the purpose that the legislature had in view in enacting said repeal. If it had been desired to repeal all special laws creating school districts, a general law might have been "applicable," but the repeal of one act creating one district necessarily excludes the consideration of a general law.

The cases cited by appellants, as we understand them, are not opposed to the foregoing views. *People* v. *Common Council,* 85 Cal. 369, [24 Pac. 727], involved the construction of an act relating to the *city* of San Diego. Moreover, it was not a *repeal* but an *amendment* to a statute and it operated to take away from said city the territory embraced in Coronado Beach. By said amendment the legislature plainly violated the letter and spirit of said constitutional provision.

In *Kennedy* v. *Miller,* 97 Cal. 429, [32 Pac. 558], the question was whether the city treasurer of the city of San Diego was entitled to the custody of certain moneys that had been apportioned by the county superintendent of schools to the school district of said city. In holding that the county treasurer was entitled to the custody of said funds the supreme court held that "the city is a corporation distinct from that of the school district even though both are designated by the same name, and embrace the same territory," and that the general school law passed by the legislature for the establishment and maintenance of one system of public schools governed the situation instead of the provisions in the freeholders' charter adopted by said city. The decision is strictly in accordance with the contention of respondents herein.

In *Platt* v. *City and County of San Francisco,* 158 Cal. 74, [110 Pac. 304], the question was as to the validity of the issuance of bonds by the city and county of San Francisco for the construction and completion of certain proposed municipally owned street railways. The opinion embraces a learned and comprehensive discussion of certain provisions of the constitution relating to the powers and forms of government of the municipalities of the state, but it has no particular bearing upon the controversy herein.

The vital point decided in *Los Animas etc. Land Co.* v. *Preciado,* 167 Cal. 580, [140 Pac. 239], was that, when a

county was divided so that part of an existing school district fell in the new county, the board of supervisors of the new county was without authority to order the annexation of that portion of the district to one of its own districts, the supreme court holding that the situation was covered and controlled by a general law passed by the legislature.

[5] Equally without merit is, in our opinion, the claim that said repealing act is in violation of the public policy of the state in that it leaves the outlying territory without any legal status as a school district. It is no doubt true, as stated in *Smith* v. *San Francisco & N. P. Ry. Co.,* 115 Cal. 584, [56 Am. St. Rep. 119, 35 L. R. A. 309, 47 Pac. 582], that " 'Public policy' is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law." Herein, there has been no such violation. It is true that by the repeal of said act the outlying territory was left without an organization as a school district and it became, according to appellants' designation, "no man's land." The general law, however, immediately became operative, creating Santa Rosa School District with boundaries coextensive with the city limits (sec. 1576, Pol. Code) and leaving the outlying territory subject to the authority of the board of supervisors as provided in subdivision 2 of section 4041 of the Political Code. We must assume that proper action has been taken and a new district formed of the outlying territory, affording necessary school facilities for the children residing therein. It may be that some delay and inconvenience have been caused by the necessity for a readjustment, but such considerations are matters for the cognizance of the legislature alone. It was for that tribunal to determine whether it was in the interest of the public welfare to make this territory subject to the general law. The reasons which prompted the desire to make the territory of the city of Santa Rosa to constitute the boundaries of one district to the exclusion of the outside land were no doubt considered adequate, but, at any rate, we cannot say that the

legislature violated any law or exceeded its authority in effecting the repeal.

Some questions as to the division of property and payment of bonded indebtedness are suggested by appellants. But we do not think they are involved in this litigation and, if any controversy concerning them should arise, they will probably be solved without the difficulty now apprehended by appellants.

[6] The problem, in our judgment, is not complicated by section 1724 of the Political Code or by the act of the legislature entitled "An act confirming the organization of school districts," approved March 18, 1905 (Stats. of 1905, p. 243). These are curative acts, the former applying to high schools and the latter to common schools. They cure only irregularities in the formation of the districts which were organized prior to said enactments, and in no manner do they create any school district or affect the repeal of any special statutes. The scope and significance of such legislation are determined in *Board of Education* v. *Hyatt,* 152 Cal. 519, [93 Pac. 117]; *Wood* v. *County of Calaveras,* 164 Cal. 405, [129 Pac. 283]; *People* v. *Van Nuys,* 173 Cal 797, [Ann. Cas. 1918D, 255, 162 Pac. 97].

[7] Appellants complain that the court failed to find upon certain special defenses set up in the answer. But since the findings are sufficient to support the judgment, the contention can be of no avail as the evidence is not brought up. The presumption would be that the evidence was all opposed to said allegations and the corresponding findings upon said defenses would necessarily have been against appellants. In this view they have suffered no prejudice. However, the truth is that said special defenses contain only immaterial facts, conclusions of law, and facts covered by the actual findings of the court. It seems unnecessary to exhibit them fully, but we content ourselves with a recital of paragraph 8 of the answer as follows: "As a further and separate defense to plaintiff's complaint and petition defendants and each and all of them aver and allege that if the repealing act of 1919 referred to in plaintiff's complaint and petition is to be construed as contended for by plaintiffs, then the said repealing act is unconstitutional in this that section 6 of article XI of the constitution of the State of California prohibits the

creation by special act of a municipal corporation, which Courthouse School District is in the sense that it operates governmentally and exercises certain state sovereignty which has been delegated to it by the state itself, and if it is unconstitutional to create a municipal corporation by a special act it is likewise unconstitutional to abolish a municipal corporation by a special act.'' It is apparent that the foregoing presents an important question of law and an interesting legal argument, but it tenders no issuable fact.

[8] In view of the well-settled principle announced by the authorities, that ''a court must move with great caution in declaring an act of the legislature unconstitutional, resolve all doubt in favor of its validity, and hold it unconstitutional only in cases where the act is plainly and palpably violative of the constitution,'' we do not feel warranted in disturbing the conclusion of the trial court.

The judgment is affirmed.

Finch, P. J., and Hart, J., concurred.