**MAPLE RUN AT AUSTIN MUNICIPAL UTILITY DISTRICT, Appellant,**

v.

**James G. MONAGHAN, Maple Run Joint Venture, S.R. Ridge Limited Partnership, and the City of Austin, Appellees.**

No. 96–0489.

Supreme Court of Texas.

Argued Sept. 4, 1996.

Decided Oct. 18, 1996.

John P. Lilly, Dallas, Thomas Walton Leonard, Francis S. Craig, Austin, for Appellant.

Karl Bayer, Andrew F. Martin, William T. Deane, Austin, William B. Steele, III, Dallas, C. Brian Cassidy, Daniel W. Bishop, II, Austin, for Appellees.

PHILLIPS, Chief Justice.

Section 43.082 of the Texas Local Government Code, enacted in 1995 and expiring on the last day of 1996, purportedly authorizes certain municipal utility districts lying within a municipality's extraterritorial jurisdiction to dissolve, requiring the affected municipality to take ownership of the district's assets and assume its debts. Because of extremely specific requirements about the amount and character of outstanding debt and other factors, Maple Run at Austin Municipal Utility District is the only district in the state qualifying for the special treatment under section 43.082. The parties stipulate to this fact, and they further stipulate that the Legislature intended for the statute to apply only to this district. In this direct appeal, we must decide whether section 43.082 violates the Texas Constitution. The trial court invalidated the statute and enjoined its enforcement. Because we hold that section 43.082 is an invalid local law under Article III, Section 56, we affirm the judgment of the trial court.

I

Maple Run at Austin Municipal Utility District (hereinafter "Maple Run" or "the District") was formed in 1983 in an area south of the City of Austin to provide utility service to the area's residents. The District, created under Chapter 54 of the Texas Water Code, is authorized to, among other things, construct and operate plants and facilities for supplying water and wastewater services. See TEX. WATER CODE § 54.201. The District is a political subdivision of the state, with the power to incur bonded indebtedness and levy ad valorem taxes. See TEX. WATER CODE §§ 54.501, 54.601.

Because Maple Run lies within the City of Austin's extraterritorial jurisdiction, the Maple Run landowners were required under section 54.016 of the Texas Water Code to obtain consent from the City to create the district.[1] In connection with the City's grant of consent, the District and the City entered into a written agreement concerning the creation and operation of the District (the "Consent Agreement"). This agreement recognizes that the District lies within the City's extraterritorial jurisdiction, and that its area "is scheduled for annexation by the City in accordance with the Annexation Plan of the City." It further requires all parties to "use their best efforts to bring about the conclusion of [the annexation] process...."

The Consent Agreement also provides that, upon annexation, the District will dissolve and the City will immediately take title to the District's assets and assume its liabilities. The District is required to obtain the City's prior approval as to the amount, terms, and conditions of all bonds issued by the District, and the City has the right to approve all plans and specifications for construction of the District's facilities. The agreement also mandates that real estate development in the District comply with the City's land use ordinances.

The District subsequently issued $20,900,-000 in "contract revenue bonds", repayable

---

1. Such request for consent must be signed by a majority (in value) of the landowners in the proposed district or, if there are more than 50 landowners, the request is sufficient if it is signed by 50 of them. See TEX. WATER CODE § 54.016(a).

out of revenues from the District's utility operations. *See* TEX. WATER CODE § 54.503(2). The District also issued $3,750,-000 in "combination tax and revenue bonds", repayable out of a combination of ad valorem taxes and revenues. *Id.* at § 54.503(3). All facilities for which the District issued its bonds have been constructed. Based on its projected use of the District facilities, the City agreed to bear 84.83 percent of the debt service for the contract revenue bonds. The City assumed no liability, prior to annexation, for the remaining part of the contract revenue bonds, or any part of the combination tax and revenue bonds.

Real estate development did not occur in Maple Run as expected. The District initially anticipated that as many as 2,000 single family and multi-family units would be developed, as well as a substantial number of commercial projects. Since 1983, however, only about 450 homes have been built, and there has been no multi-family or commercial development. Accordingly, revenues from water and wastewater services have been much lower than expected, forcing the District to assess relatively high taxes and monthly surcharges to homeowners. Despite these high rates, the District contends that it is still experiencing serious financial trouble.

In 1995, the Legislature passed Senate Bill 1261, which was codified as section 43.082 of the Texas Local Government Code. This act authorizes the municipal utility district that meets its specific requirements to dissolve upon resolution of the district's board, without consent from the adjacent municipality, and upon dissolution requires the municipality to assume the assets and liabilities of the district.

When a district dissolves under section 43.082, the municipality is required to provide full municipal services to the area, and the municipality may annex the district by simple resolution, without following the normal notice and hearing procedures. *See* TEX. LOCAL GOV'T CODE § 43.082(b), (c). The municipality may assess a $25 monthly surcharge on utility customers in the former district and, importantly, may also assess a platting fee surcharge on developers desiring to subdivide land in the former district. The surcharge may be in an amount sufficient to offset the financial burden imposed on the municipality from assuming the district's indebtedness. *See id.* at § 43.082(e).

The application of section 43.082 is restricted as follows:

(a) This section applies to any district created in or after 1983 within the extraterritorial jurisdiction of a municipality with written consent by ordinance or resolution as required by Section 42.042 if the district has:

(1) issued not less than $17 million nor more than $21 million in bonds, excluding refunding bonds, repayable in a manner authorized under Section 54.503(2), Water Code;

(2) issued at least $3.5 million of bonds repayable in a manner authorized under Section 54.503(3), Water Code, before June 1, 1993; and

(3) constructed all of the facilities for which the bonds were issued prior to December 31, 1991.

TEX. LOCAL GOV'T CODE § 43.082(a). The parties stipulate that Maple Run is the only district in the State meeting these criteria, that only Maple Run requested its enactment, and that the Legislature intended for section 43.082 to apply only to Maple Run. In other words, while Maple Run is not mentioned by name in the statute, the Legislature selected the criteria for the purpose of restricting the statute solely to that district. Moreover, because section 43.082 expires on December 31, 1996, there is no chance that it will ever apply to any other districts. The legislative history accompanying Senate Bill 1261 confirms that the statute was enacted to relieve the financial problems of Maple Run. *See Bill Analysis of S.B. 1261* (May 11, 1995).

In January 1996, the Maple Run board of directors adopted a resolution dissolving the District in accordance with section 43.082,

effective May 10, 1996. Prior to dissolution, Maple Run landowners James G. Monaghan, Maple Run Joint Venture and S.R. Ridge Limited Partnership (collectively "Monaghan") sued the District and the City of Austin seeking to enjoin enforcement of section 43.082, contending that it violated the Texas Constitution. Monaghan argued that section 43.082 was a special or local law prohibited by Article III, Section 56, a grant of public money and credit prohibited by Article III, Sections 50, 51, and 52, and an extinguishment of public debt prohibited by Article III, Section 55. The City filed a cross-claim against the District raising a similar constitutional challenge, thus aligning itself with Monaghan on this issue. Although receiving notice of the constitutional challenge, the Attorney General declined to intervene in the proceedings. See TEX. CIV. PRAC. & REM.CODE § 37.006(b). After stipulating to the essential underlying facts, the parties filed cross motions for summary judgment directed solely to the constitutional issues.

On May 6, 1996, the trial court, without stating its reasons, signed a final judgment declaring the statute unconstitutional and permanently enjoining its operation. The District perfected a direct appeal to this Court, challenging this ruling. See TEX. GOV'T CODE § 22.001(c); TEX.R.APP. P. 140. Monaghan and the City are aligned as appellees, arguing in support of the trial court's judgment. We took jurisdiction over the appeal. See TEX.R.APP. P. 140(b).

## II

### A

■ Article III, Section 56 of the Texas Constitution provides in relevant part:

LOCAL AND SPECIAL LAWS. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law ... [r]egulating the affairs of counties, cities, towns, wards or school districts....

And in all other cases where a general law can be made applicable, no local or special law shall be enacted....

While the terms "local law" and "special law" have at times been used interchangeably, a local law is one limited to a specific geographic region of the State, while a special law is limited to a particular class of persons distinguished by some characteristic other than geography. See 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 273–277 (1977).

■ The purpose of Section 56 is to "prevent the granting of special privileges and to secure uniformity of law throughout the State as far as possible." Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941). In particular, it prevents lawmakers from engaging in the "reprehensible" practice of trading votes for the advancement of personal rather than public interests. Id.

■ A law is not a prohibited local law merely because it applies only in a limited geographical area. We recognize the Legislature's broad authority to make classifications for legislative purposes. See Miller, 150 S.W.2d at 1001. However, where a law is limited to a particular class or affects only the inhabitants of a particular locality, "the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation." Miller, 150 S.W.2d at 1001–02. "The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791, 793 (1950).

For example, in County of Cameron v. Wilson, 160 Tex. 25, 326 S.W.2d 162 (1959), we upheld a law providing for the development of public parks that applied only in counties "border[ing] on the Gulf of Mexico within whose boundaries is located any island, part of an island, or islands, suitable for park purposes." 326 S.W.2d at 165. We held that "[t]he coastal geography of Texas

affords a reasonable distinction between the island park on the one hand and the mainland park on the other," noting that the "demand for the conveniences usually provided by county parks may be greater along the coast than in many inland areas." *Id.* at 166.

Similarly, in *Robinson v. Hill,* 507 S.W.2d 521 (Tex.1974), the Court upheld a law imposing special bail bond regulations in counties with a population of 150,000 or more. We held that there was a reasonable basis for this classification, concluding that

> [t]he Legislature in this instance may well have concluded that bail bondsmen in the more populous counties should be regulated and required to secure their obligations because of the high incidence of crime and the difficulties involved in enforcing bond forfeitures ..., but that the same safeguards and procedures were not necessary and would be unduly burdensome in more sparsely populated areas.

*Id.* at 525. *See also Smith v. Davis,* 426 S.W.2d 827, 830–32 (Tex.1968) (upholding special ad valorem tax rules for hospital districts in counties with a population greater than 650,000 and operating a teaching hospital).

On the other hand, we have struck down several laws under Section 56 where no reasonable basis supported the classification. For example, in *Miller,* we invalidated a law authorizing an economic development tax that applied only in counties

> having a population of not less than 125,-000 nor more than 175,000 inhabitants, and containing a city having a population of not less than 90,000 inhabitants, as shown by the last preceding Federal census.

150 S.W.2d at 1002. We held that these population brackets, which included only El Paso County, bore no substantial relation to the objects sought to be accomplished by the act.

Similarly, in *City of Fort Worth v. Bobbitt,* 121 Tex. 14, 36 S.W.2d 470, 471–72 (1931), the Court struck down a public works law that applied only in cities with a population between 106,000 and 110,000. The Court held that the bracket advanced no legitimate purpose, but rather was simply a means of singling out one city for special treatment.

Likewise, in *Bexar County v. Tynan,* 128 Tex. 223, 97 S.W.2d 467 (1936), the Court invalidated an act reducing the compensation of certain officers in counties with a population between 290,000 and 310,000, which included only Bexar County. The Court concluded that

> the attempted classification is unreasonable and arbitrary to such degree as to indicate beyond doubt that the purpose of the Legislature was to single out one county and to attempt to legislate upon the question of the compensation of its officers, and not upon the subject generally....

*Id.* at 470. *See also Smith v. Decker,* 158 Tex. 416, 312 S.W.2d 632, 636 (1958) (striking down act imposing special bail bond rules in counties with population between 73,000 and 100,000); *Rodriguez v. Gonzales,* 148 Tex. 537, 227 S.W.2d 791, 793–94 (1950) (invalidating act providing for special procedures for collecting ad valorem taxes applicable only in certain counties along the Mexican border); *Anderson v. Wood,* 137 Tex. 201, 152 S.W.2d 1084, 1087 (1941) (invalidating act authorizing the employment of special traffic officers which excluded counties with a population between 195,000 and 205,000, such exclusion covering only Tarrant County).

Here, there is no dispute that the Legislature singled out Maple Run for special treatment. No one contends that the brackets selected by the Legislature have anything to do with the purpose of the statute; rather, these brackets serve solely to restrict section 43.082 to the District without actually identifying it by name. Further, the District offers no legitimate reason, and none appears in the record, why the statute is limited to Maple Run. The parties have stipulated that there are other districts in the state 1) with serious financial troubles, 2) with tax rates higher than Maple Run, 3) with annual debt service higher than Maple Run, and 4) with overall indebtedness higher than Maple Run.

Because the Legislature singled out the District for special treatment without any reasonable basis for doing so, section 43.082 has all the appearances of a local law within the meaning of Article III, Section 56.

B

The District argues, however, that section 43.082 is not a local law because it affects a matter of statewide interest. This argument, as framed by the District, consists of three components: 1) section 43.082 serves a conservation purpose; 2) Article XVI, Section 59 of the Texas Constitution mandates that conservation of our natural resources is of statewide importance; and 3) laws affecting matters of statewide importance are by definition not local or special laws. We conclude that this approach is flawed.

■ We assume for purposes of this discussion that section 43.082 does in fact serve a conservation purpose.[2] The District relies on Article XVI, Section 59 of the Texas Constitution for the general proposition that conservation of our natural resources is a matter of statewide importance. Section 59 provides in relevant part:

> The conservation and development of all the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, . . . are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

TEX. CONST. art. XVI, § 59(a). While we agree that all Texans have an interest in protecting this State's natural resources, we disagree that one may simplistically conclude that any law having a conservation purpose is ipso facto not a local or special law. The District relies on a series of cases in which this Court has espoused the principle that a law is not local, even if its operation is restricted to a specific area, if it affects a matter of statewide interest. See Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629, 636 (1935); Stephensen v. Wood, 119 Tex. 564, 34 S.W.2d 246, 248 (1931); Reed v. Rogan, 94 Tex. 177, 59 S.W. 255, 257 (1900); Clark v. Finley, 93 Tex. 171, 54 S.W. 343, 346 (1899). The statutes involved in these cases, however, affected a substantial class of persons over a broad region of the state, as opposed to section 43.082, which applies to one municipal utility district. Moreover, our later cases have clarified that the ultimate question under Article III, Section 56 is whether there is a reasonable basis for the Legislature's classification. See, e.g., Robinson v. Hill, 507 S.W.2d 521, 525 (Tex.1974); Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791, 793 (1950); Miller v. El Paso County, 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941). The significance of the subject matter and the number of persons affected by the legislation are merely factors, albeit important ones, in determining reasonableness:

> Where the operation or enforcement of a statute is confined to a restricted area, the question of whether it deals with a matter of general rather than purely local interest is an important consideration in determining its constitutionality. When a statute grants powers to or imposes duties upon a class of counties, the primary and ultimate test is whether there is a reasonable basis for the classification and whether the law operates equally on all within the class.

County of Cameron v. Wilson, 160 Tex. 25, 326 S.W.2d 162, 165 (1959). For example, in City of Irving v. Dallas/Fort Worth Int'l Airport Bd., 894 S.W.2d 456, 467 (Tex.App.—

---

2. According to the District, the statute ensures that the District's financial problems will not lead to suspension of utility services, which could result in health and environmental problems from raw sewage and contaminated drinking water. The legislative history indicates that the statute was enacted to relieve the financial problems of Maple Run, and opines that "district services may cease to be provided if the district is not annexed." Bill Analysis of S.B. 1261 (May 11, 1995). The bill was referred through the Senate Committee on Intergovernmental Relations and the House Committee on Land and Resource Management.

Fort Worth 1995, no writ), the court upheld legislation giving certain municipal airport authorities the exclusive power to make land-use decisions for property within the geographic boundaries of the airport. Because the statute applied only to airports operated jointly by two cities with population exceeding 400,000, only D/FW Airport qualified. The court upheld this classification as reasonable, however, noting the tremendous statewide importance of the facility and the special zoning conflicts that can arise for a jointly operated airport. It does not follow, however, that any legislation having some incidental effect on the environment must be upheld, regardless of whether there was any legitimate basis for the classification drawn by the Legislature. This would seriously undermine the purpose of Article III, Section 56.

■ Because section 43.082 singles out one specific municipal utility district for special treatment without any reasonable basis for doing so, we hold that it is a local law within the meaning of Section 56.

### III

The District next argues that, even if section 43.082 is a local law, it is not a *prohibited* local law. The first sentence of Section 56 bars the Legislature from passing local or special laws "except as otherwise provided in this Constitution." The District contends that section 43.082 is specifically authorized under Article XVI, Section 59, and thus falls under this exception.

As noted earlier, Section 59(a) provides that the conservation and development of the State's natural resources are "public rights and duties," and directs the Legislature to pass "all such laws as may be appropriate thereto." TEX. CONST. art. XVI, § 59(a). To accomplish these purposes, Section 59(b) specifically authorizes the Legislature to create conservation and reclamation districts as follows:

> There may be created within the State of Texas, or the State may be divided into, such number of conservation and reclama-

tion districts as may be determined to be essential to the accomplishment of the purposes of this amendment to the constitution, which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law.

TEX. CONST. art. XVI, § 59(b). Section 59(c) authorizes conservation and reclamation districts to incur bonded indebtedness to achieve their purposes, and to levy taxes for the purpose of repaying the debt. *See* TEX. CONST. art. XVI, § 59(c). Maple Run is a district created under and subject to the authority of Section 59. *See* TEX. WATER CODE § 54.011.

■ It is well settled that Section 59(b) authorizes the Legislature to pass local legislation creating specific conservation and reclamation districts without violating Article III, Section 56. *See Lower Neches Valley Authority v. Mann*, 140 Tex. 294, 167 S.W.2d 1011, 1014 (1943); *Harris County Flood Control Dist. v. Mann*, 135 Tex. 239, 140 S.W.2d 1098, 1101 (1940). Indeed, the Legislature has created hundreds of these districts by special law. *See* WATER AUXILIARY LAWS, Table III, 1996 pamphlet.

Moreover, the Legislature has *dissolved* numerous conservation and reclamation districts by special act. *See, e.g.,* Acts 1995, 74th Leg., p. 928, ch. 117; Acts 1995, 74th. Leg., p. 1921, ch. 192; Acts 1993, 73rd Leg., p. 2871, ch. 731; Acts 1991, 72nd Leg., p. 814, ch. 189; Acts 1989, 71st Leg., p. 1910, ch. 573; Acts 1989, 71st Leg., p. 1570, ch. 423; Acts 1985, 69th Leg., p. 2931, ch. 844. While these special dissolution acts are not before us and we express no opinion on their validity, they are notably different from section 43.082. In every other instance that we have examined, the Legislature either 1) determined that the district had no outstanding indebtedness, 2) required the District to develop a plan to liquidate its indebtedness prior to dissolution, or 3) conditioned dissolu-

tion on a municipality's *consent* to take over the indebtedness and service requirements of the district.

■ Section 43.082, on the other hand, requires the City to assume the assets and indebtedness of the District without the City's consent, requires the City to provide full municipal services to the District immediately, and requires landowners desiring to subdivide property in the District to pay a substantial platting fee to offset the City's financial burden. While we presume that legislative enactments are constitutional and, if possible, interpret them in a manner to avoid constitutional infirmities, *see Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996), Section 59 cannot be read so broadly as to specifically authorize this local legislation. Section 59 allows the Legislature to create conservation and reclamation districts when essential to accomplish the purposes of the amendment; it does not authorize the Legislature to intimately regulate the financial affairs of a specific community—without that community's consent—in the name of conservation. Indeed, forcing indebtedness upon a political subdivision goes against the tenor of Section 59. While Section 59(c) allows the Legislature to authorize districts to incur bonded indebtedness and to levy taxes to repay such indebtedness, it specifically provides that

> the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property taxpaying voters of such district and the proposition adopted.

Thus, while Section 59 grants the Legislature a broad mandate to protect our natural resources, it recognizes local control of financial obligations. Under these circumstances, Section 59 cannot reasonably be read as authorizing local legislation that arbitrarily singles out a community for financial regulation.

■ For the foregoing reasons, we hold that section 43.082 is not authorized under Article XVI, Section 59 of the Texas Constitution, and therefore is a prohibited local law under Article III, Section 56.

IV

■ The District finally argues that section 43.082 does not violate Article III, Section 56 because the statute merely requires the parties to do what they eventually would have been required to do under the Consent Agreement. We disagree. While the City did agree to assume the District's assets and indebtedness upon annexation, and to use its best efforts to bring about annexation, there is no factual stipulation in the record, or even argument from the District, regarding when that annexation might occur. Under these circumstances, this executory agreement cannot serve as a basis for upholding local legislation that violates the Texas Constitution. Moreover, one of the major components of section 43.082—the platting fee against certain District landowners—is not provided for under any circumstances in the Consent Agreement.

The District also points out that the City has already assumed responsibility for a substantial portion of the contract revenue bonds. Nonetheless, it is undisputed that, absent the effect of section 43.082, the City would have no liability, prior to annexation, for the combination tax and revenue bonds or the District's portion of the contract revenue bonds.

\* \* \* \* \* \*

Because we hold that section 43.082 violates Article III, Section 56, we do not consider Monaghan's and the City's arguments that it also violates other provisions of the Texas Constitution. We affirm the judgment of the trial court.