Raul DIAZ, Juan Sanchez, Luis F. Borrego, Elizabeth Rivera, Erasmo T. Payan, and Raul Rodriguez, Appellants,

v.

The STATE of Texas, Appellee.

No. 08–99–00486–CV.

Court of Appeals of Texas,
El Paso.

Aug. 3, 2000.

Ronald L. Jackson, Diamond, Rash, Gordon & Jackson, P.C., El Paso, John R. Batoon, Diamond, Rash, Leslie, Smith & Samaniego, El Paso, for Appellant.

Jose R. Rodrigiez, County Attorney, Jo Anne Bernal, Asst. County Atty., El Paso, for the State.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is an accelerated appeal from a judgment entered in a *quo warranto* proceeding declaring that the City of San Elizario is not lawfully incorporated and removing Raul Diaz (the Mayor), Raul Rodriguez (Town Clerk), Juan Sanchez (Mayor Pro–Tem), Erasmo T. Payan (Alderman), Luis Borrego (Alderman), and Elizabeth Rivera (Alderwoman) from their positions as officeholders in San Elizario.[1] Appellants attack the judgment by a single point of error. We affirm.

## FACTUAL SUMMARY

The City of San Elizario[2] was incorporated by a special act of the Texas Legislature in 1871. Act of April 5, 1871, 12th Leg., R.S., ch. 42, 1871 Tex.Gen.Laws 83, *reprinted in* 6 H.P.N. GAMMEL, THE LAWS OF TEXAS 1822–1897 at 1221 (Austin, Gammel Book Co. 1898). The 1871 Act also contained provisions for the conveyance of land.[3] Thereafter, while purportedly acting as a general law city rather than according to its special charter as provided by the 1871 Act, San Elizario deeded prop-

---

1. Rodriguez, Sanchez, Payan, Borrego, and Rivera constitute the Town Council of San Elizario. We will refer to the Mayor and Town Council collectively as Appellants unless noted otherwise.

2. This case is rife with historical significance inasmuch as San Elizario became the first county seat of El Paso County in 1850.

3. According to evidence developed in the trial court, the State of Texas, in an 1853 Act known as the Relief Act for the inhabitants of Presidio San Elizario, granted four leagues of land to the community of San Elizario. The grant of land was based upon the Spanish grant of 1790. Allotments of land were made to individual settlers and the remaining land belonged to the community. The 1871 Act permitted San Elizario to grant or sell portions of real estate owned by the city only to the following classes of persons or in the following circumstances: actual settlers on the lands who were citizens of San Elizario; to any person or company for the erection of buildings to be used for mechanical or manufacturing purposes, or for the building of railroad depots or workshops; and finally, to any person or persons who desired to become citizens of San Elizario and who would become an actual settler on the lands sold or granted. Further, the 1871 Act prescribed in detail the procedure to be followed by San Elizario as well as the person or company seeking to buy or be granted land.

erty to its inhabitants. As a result, the titles to the land so deeded became clouded. In order to rectify this situation, the legislature enacted a special law in 1891 validating deeds issued by San Elizario since 1871. Act approved Mar. 17, 1891, 22nd Leg., R.S., ch. 4, 1891 Tex.Gen.Laws 5, *reprinted in* 10 H.P.N. Gammel, The Laws of Texas 1822–1897 at 233 (Austin, Gammel Book Co. 1898). Within days of that act, the legislature, expressly finding that many provisions in the 1871 Act of incorporation were oppressive and unjust to persons living and owning property within the corporate limits of San Elizario, repealed the 1871 Act. Act approved Mar. 23, 1891, 22nd Leg., R.S., ch. 11, 1891 Tex.Gen.Laws 24, *reprinted in* 10 H.P.N. Gammel, The Laws of Texas 1822–1897 at 252 (Austin, Gammel Book Co. 1898).

Purportedly acting under the charter and authority of the 1871 Act, San Elizario held elections in 1997[4] and elected city officers who are the subjects of this *quo warranto* proceeding. The Honorable José Rodriguez, El Paso County Attorney, sought an opinion from the Texas Attorney General on the validity of the 1891 Act, and on August 30, 1999, the Attorney General issued an opinion upholding the constitutionality of the 1891 special law which disincorporated San Elizario. *See* Op.Tex. Att'y Gen. No. JC–0101 (1999). Thereafter, the State of Texas, acting by and through the El Paso County Attorney,[5] brought this *quo warranto* proceeding seeking a declaration that San Elizario is

not incorporated and that Appellants lack authority to act on behalf of San Elizario. *See* Tex.Civ.Prac. & Rem.Code Ann. § 66.001 (Vernon 1997).[6] Appellants urged in the trial court, as they do on appeal, that the 1891 Act disincorporating San Elizario is unconstitutional. Following a hearing, the trial court rendered judgment in favor of the State. More specifically, the judgment declared that San Elizario is not lawfully incorporated and Appellants are without authority to act on behalf of San Elizario. The judgment also removed Appellants from office.

## CONSTITUTIONALITY OF 1891 ACT

In their sole point of error, Appellants contend that the trial court's judgment should be reversed because the Act of 1891 is unconstitutional, reasoning that it is a local or special law which changes the charter of a town in contravention of Article 3, sec. 56 of the Texas Constitution. When reviewing the constitutionality of a statute, we begin our analysis with a presumption of validity. *Barshop v. Medina County Underground Water Conserv. Dist.*, 925 S.W.2d 618, 629 (Tex.1996). We further presume that the legislature has not acted unreasonably or arbitrarily; a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. *Weiner v. Wasson*, 900 S.W.2d 316, 330 (Tex.1995); *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968). In construing a statute, our primary aim is to

---

**4.** Purely for historical purposes, we note that no action was taken pursuant to the charter in the 106 years between the 1891 repealing act and the 1997 elections.

**5.** The County of El Paso is interested in the status of San Elizario because it provides a variety of services to its approximately 14,000 inhabitants, including road and bridge maintenance and repairs and law enforcement.

**6.** An action in the nature of *quo warranto* is available if a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office, including an office in a corporation created by the authority of this state, or if an association of persons acts as a corporation without being legally incorporated. *See* Tex. Civ.Prac. & Rem.Code Ann. § 66.001(1)(3)(Vernon 1997).

give effect to the legislature's intent. *Texas Water Comm'n v. Brushy Creek Mun. Util.Dist.,* 917 S.W.2d 19, 21 (Tex.1996). A court must attempt to ascertain what the legislature intended and interpret the statute accordingly. *Barshop,* 925 S.W.2d at 629. We consider the objective sought to be attained by the statute, the circumstances of the statute's enactment, legislative history, the common law and former statutory provisions, and the consequences of a particular construction. TEX.GOV'T CODE ANN. § 311.023 (Vernon 1998); *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). When possible, we are to interpret legislative enactments in such a manner as to avoid constitutional infirmities. *Barshop,* 925 S.W.2d at 629. The party attacking the statute bears the burden of establishing its unconstitutionality. *Texas Public Bldg. Authority v. Mattox,* 686 S.W.2d 924, 927 (Tex. 1985); *Robinson v. Hill,* 507 S.W.2d 521, 524 (Tex.1974).

The relevant portion of Article 3, sec. 56 provides:

> The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law,
>
> . . .
>
> Incorporating cities, towns or villages, or changing their charters;
>
> . . .
>
> And in all other cases where a general law can be made applicable, no local or special law shall be enacted. . . .

TEX. CONST. art. 3, § 56.

■ Article 3, sec. 56 was intended to prevent the legislature from enacting laws granting special privileges to particular persons, groups, or locales in the state and to secure uniformity of law throughout the state as far as possible. *Maple Run at* *Austin Mun. Utility Dist. v. Monaghan,* 931 S.W.2d 941, 945 (Tex.1996). It has also been viewed as preventing lawmakers from engaging in the "reprehensible practice of trading and 'logrolling,'" i.e., trading votes to advance personal rather than public interests. *City of Austin v. City of Cedar Park,* 953 S.W.2d 424, 431 (Tex. App.—Austin 1997, no writ), *quoting Miller v. El Paso County,* 136 Tex. 370, 150 S.W.2d 1000, 1001 (1941).

■ Although the terms "local law" and "special law" have sometimes been used interchangeably, they have distinct meanings. *See Maple Run,* 931 S.W.2d at 945. A local law is one limited to a specific geographic region of the state, while a special law is limited to a particular class of persons distinguished by some characteristic other than geography. *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,* 952 S.W.2d 454, 465 (Tex.1997); *Maple Run,* 931 S.W.2d at 945. Here, the Act disincorporating San Elizario obviously pertains solely to a specific geographic region. However, a law is not a prohibited local law merely because it applies only in a limited geographic area. *City of Austin,* 953 S.W.2d at 431. Notwithstanding Article 3, sec. 56, the legislature has broad authority to make classifications for legislative purposes, even though the legislation may be applicable only to a particular class or, in fact, affect only the inhabitants of a particular locality. *Miller,* 150 S.W.2d at 1001; *City of Austin,* 953 S.W.2d at 431. When a law is limited to a particular class or affects only the inhabitants of a particular locality, however, "the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation." *Maple Run,* 931 S.W.2d at 945, *quoting Miller,* 150

S.W.2d at 1001–02. Thus, the correct inquiry is whether there is a reasonable basis for the classification. *See Maple Run*, 931 S.W.2d at 945.

■■■ According to the State, we need not engage in the analysis prescribed by *Maple Run* because the particular provision of Article 3, sec. 56 applies only to creative statutes and does not apply to a repealing statute. Stating the argument differently, Article 3, sec. 56 does not either expressly or impliedly limit the legislature's inherent power to repeal its own statutes. On the other hand, Appellants vigorously contend that the 1891 Act is an impermissible local law within the meaning of Article 3, sec. 56 because it changed the charter of San Elizario by absolutely nullifying it.

■■■ The lawmaking power of the people is vested in our state legislature by virtue of Article 3, sec. 1 of the Texas Constitution. TEX. CONST. art. 3, § 1 ("The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas' "). The legislature's power and authority is plenary and its extent is limited only by the express or clearly implied restrictions thereon contained in or necessarily arising from the Constitution. *Government Services Ins. Underwriters v. Jones*, 368 S.W.2d 560, 563 (Tex.1963); *State v. Brownson*, 94 Tex. 436, 61 S.W. 114 (1901). The power of the legislature includes the power to make, alter, and repeal laws, when such power is not expressly or impliedly forbidden by other provisions of the state Constitution. *Walker v. Baker*, 145 Tex. 121, 196 S.W.2d 324, 328 (1946); *Brown v. City of Galveston*, 97 Tex. 1, 75

S.W. 488, 492 (1903). In order for a reviewing court to hold an act of the legislature unconstitutional, it must be able to point to the specific provision which prohibits the legislation. *Brownson*, 61 S.W. at 114. If the constitutional provision does not contain an express limitation, then the court must be able to identify a clearly implied limitation on the legislature's power. *Id.*

The purpose of Article 3, sec. 56 is to prohibit the legislature from granting favors to isolated segments of our state whether by geography or some other classification. While this provision prevents the legislature from "changing a charter" by creative act, it does not expressly prohibit it from repealing a statute of incorporation. In fact, we find nothing in the entire provision which could be read as either expressly or impliedly limiting this inherent power of the legislature. Our conclusion is supported by *Central Wharf & Warehouse Co. v. City of Corpus Christi*, 23 Tex.Civ.App. 390, 57 S.W. 982 (Galveston 1900, writ ref'd), a case relied upon by the Attorney General in upholding the constitutionality of the 1891 statute. *See* No. JC–0101. In *Central Wharf*, the court of civil appeals considered the alleged invalidity of an 1875 Act which repealed a prior law that had incorporated the City of Corpus Christi. Rejecting an argument that the repealing act violated a prior constitutional provision virtually identical to Article 3, sec. 56[7] because it changed the city's charter, the Court observed:

> From a reading of the entire section it is clear that its object and meaning is to prohibit the granting of special favors by the legislature, and to require that all legislation upon the subjects therein

**7.** Article XII, section 40 provided that "[t]he legislature shall not pass local or special laws . . . incorporating cities or towns or changing

or amending the charter of any city or village." *Central Wharf*, 57 S.W. at 983.

enumerated should be equal and uniform. It certainly did not mean to take away from the legislature its inherent power of repealing any law theretofore passed by it, and we must hold that said repealing act is a valid law.

*Central Wharf,* 57 S.W. at 983.

We believe this principle applies equally to Article 3, sec. 56. *See* JC–0101. Our conclusion that this constitutional provision does not limit the legislature's inherent power to repeal laws is further supported by decisions from other states construing similar constitutional provisions. *See People ex rel. Williamson v. Rinner,* 52 Cal. App. 747, 199 P. 1066 (3 Dist.1921)(citing *Central Wharf* and numerous other cases with approval, Court held act which repealed special act creating school district did not violate constitutional provision against creation of local or special laws because the legislature's inherent power to repeal is not expressly limited by the state constitution); *People ex rel. Rogerson v. Crawley,* 274 Ill. 139, 113 N.E. 119 (1916)(holding that legislation which repealed the charter of the City of Jacksonville did not violate constitutional provision prohibiting local or special laws which change the charter of a city); *State v. Prather,* 84 Kan. 169, 112 P. 829 (1911)(stating that adoption of a constitutional provision against special legislation does not prevent the repeal of previously enacted special law); *Luehrman v. Taxing District of Shelby County,* 70 Tenn. 425, 2 Lea 425 (1879)(holding that constitutional provision which prohibited local and special laws did not limit legislature's inherent power to repeal the corporate privileges of a particular community, and therefore, act which repealed the charter of the City of Memphis was not unconstitutional). We conclude that Article 3, sec. 56 does not restrict the legislature in the exercise of its inherent power to repeal an earlier law of incorporation, and therefore, the 1891 repealing act is not unconstitutional. *See* JC–0101; *see also Central Wharf,* 57 S.W. at 983.

 Despite our determination that the 1891 repealing act is not subject to Article 3, sec. 56 and the analysis prescribed by *Maple Run,* we will nevertheless address the remaining arguments of Appellants. They first generally contend that the 1891 Act is an unconstitutional local law because it benefitted a small group of landowners, including one of the drafters of the 1891 legislation, Octaviano A. Larrazolo. In support of this argument, they point to certain newspaper articles from 1889 and 1891 addressing the concern of numerous landowners, including Larrazolo, that the deeds executed by San Elizario were legally ineffectual to convey title and the landowners' efforts to obtain legislation to validate their deeds. They also rely upon the testimony of Dr. Rick Hendricks, an historian and co-author of a book about the history of San Elizario.[8] To the extent Appellants suggest there were sinister motives behind the 1891 legislation which validated the deeds, there is no evidence to support this accusation. Clearly, each landowner in San Elizario

---

8. The trial court admitted into evidence an El Paso Times newspaper article dated January 30, 1889 which pertained solely to the validity of the deeds executed by San Elizario since its incorporation. The article related that two persons identified as "Judge Townsend" and "District Clerk Larrazolo" had drafted legislation to perfect title to the land so deeded. Dr. Hendricks testified that O.A. Larrazolo was the District Clerk of Court at that time. Accepting Dr. Hendricks' testimony as true, this article proves only that Larrazolo drafted the legislation which validated the deeds and there is no evidence that Larrazolo drafted the repealing act. However, Dr. Hendricks testified that his research revealed Larrazolo to be one of the drafters of the repealing act.

would have benefitted equally by having his title validated by the legislature. Making a similar argument, Appellants next urge that the repealing act does not satisfy the *Maple Run* test because only a select group of non-Hispanic landowners benefitted from the repealing act, and therefore, the act involves an unreasonable classification. We have already determined that the repealing act is not subject to the *Maple Run* analysis. However, even if we applied this test to the repealing act, the argument fails. We note at the outset that Appellants have misstated the inquiry. The classification made by the legislature is not that of landowners nor non-Hispanic landowners but rather it is, both on its face and as applied, a geographic classification. In examining such a classification, the issue is not whether every person living within the geographic region receives the exact same benefit of the legislation but rather whether the geographic classification is a reasonable one when examined in light of the public purpose sought to be accomplished by the legislation. Here, the stated public purpose was to disincorporate San Elizario because certain provisions within the original charter were determined by the legislature to be unjust to the city's residents. In light of this purpose, a geographic classification is the only practicable choice. Even if we were to examine the impact of the legislation on the individual residents of San Elizario, there is no merit to the argument that the repealing act benefitted only a select group of non-Hispanic landowners, presumably because they no longer had to pay city property taxes and were not subject to land use regulation. First, Appellants offered absolutely no evidence that would show the ethnic background of the property owners in 1891 or how certain ethnic groups and races benefitted from the repealing act more than other groups of landowners. All property owners in San

Elizario, regardless of ethnicity or race, would have received the same advantages and disadvantages from disincorporation. Second, it is not only property owners who benefitted from the repealing act. By virtue of disincorporation, the city government also lost the power to "license, tax and regulate hawkers, peddlers, auctioneers, theatrical and other exhibitions, shows and amusements, billiard tables, nine or ten pin alleys, tippling houses, dram shops and groceries, and to determine the amount of tax on the same; and to suppress gaming or gambling houses, by whatever name or description known, and all disorderly houses.... " Surely, certain residents and business owners in San Elizario would have benefitted more than others from the city losing this taxing and regulatory power. These are only two examples of potential benefits to residents of San Elizario from disincorporation. Common sense dictates that as is the case with nearly every law passed by our state legislature, not every citizen in San Elizario would have been impacted to the same degree by the repealing act. We decline to hold that a local law violates Article 3, sec. 56 simply because it has a greater impact on some citizens than others.

 Focusing on the final clause of Article 3, sec. 56, Appellants next argue that the enactment of the 1891 legislation is unconstitutional because the legislature could have provided for the dissolution of specially incorporated towns by a general law rather than through this local law. They point out that the legislature had enacted general laws dealing with specially incorporated towns prior to enactment of the repealing act. As an example of more recent general laws on the same subject, they direct our attention to TEX.LOC.GOV'T CODE ANN. § 62.001 (Vernon 1988), which permits a special-law municipality of less than 10,000 inhabitants to abolish its cor-

porate existence. Appellants have not pointed to any general laws in existence in 1891 which would have allowed the disincorporation of San Elizario.[9] Absent a desire to repeal all special laws of incorporation, the legislature could not have created a general law to accomplish what it did by the special act. *See People ex rel. Williamson,* 52 Cal.App. at 754–55, 199 P. 1066 (rejecting the same argument). Even assuming that such a general law existed in 1891, the question of whether a general law can be made applicable in any case is to be determined by the legislature and the courts will not interfere with that determination. *See City of Oak Cliff v. State ex rel. Gill,* 77 S.W. 24, 25 (Tex.Civ.App.— Dallas 1903), *aff'd,* 97 Tex. 383, 79 S.W. 1 (1904)(so holding in rejecting challenge to a special act abolishing City of Oak Cliff and incorporating it within the corporate limits of the City of Dallas on ground that a general law existed for the disincorporation of cities); *see also Lamon v. Ferguson,* 213 S.W.2d 86, 88 (Tex.Civ.App.— Austin 1948, no writ); *Smith v. Grayson County,* 18 Tex.Civ.App. 153, 44 S.W. 921, 923 (Dallas 1897, writ dism'd).

For all of these reasons, we conclude that the 1891 Act is constitutional. The sole point of error is overruled and the judgment of the trial court is affirmed.

---

9. At oral argument, Appellants cited TEX.LOC. GOV'T CODE ANN. § 5.903 (Vernon 1999) and its predecessor as a general law that the legislature could have made applicable. Section 5.903 permits a special-law municipality incorporated before June 30, 1881 to amend its charter in any regard that does not conflict with the law of this state if the amendment is approved by a resolution of the governing body of the town or village by at least a two-thirds vote at an election held to ratify the amendment. It is questionable whether this provision allows disincorporation since that would conflict with the statute incorporating San Elizario.