**SUBURBAN UTILITY CORP., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 16860.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 19, 1977.

Rehearing Denied June 16, 1977.

Sears & Burns, Robert L. Burns, Houston, for appellant.

John L. Hill, Atty. Gen., J. David Hughes, David F. Bragg, Nicolas J. Perez, Asst. Attys. Gen., Houston, for appellee.

EVANS, Justice.

This case requires a determination of the constitutionality of Tex.Rev.Civ.Stat.Ann. art. 2372q–1 (Supp. 1976–1977).

This statute, which became effective on September 1, 1975, provided that the commissioners court of any county with a population of more than 1,500,000, according to the last preceding federal census, should regulate water and sewer rates of private water companies within and without the limits of incorporated cities and towns if (a) the private company charged or proposed to charge residential rates in any service area which exceeded by 30% or more the highest residential rate charged by the water department of the largest city in the county, or (b) a petition was submitted to commissioners court signed by at least 30% of the persons residing in one or more of the service areas requesting that the court exercise regulatory authority over the company. Acts 64th Leg., 1975, ch. 640, p. 25.

Suburban Utility Corp., a private water company within the definition of Article 2372q–1, provides water service to several subdivisions in Harris County. In January 1976 the residents of several such areas, including Castlewood Subdivision, filed a petition with Harris County Commissioners Court requesting that it regulate Suburban's rates. After a hearing on April 23, 1976, the commissioners court adopted an order directing that the rate for water charged by Suburban to the residents of Castlewood Subdivision be "set at 30% above the rate charged by the City of Houston, but not to exceed an 8% profit as provided by law on the investments of the said Company . . .," and further providing "that the exact dollar rate figure will be determined by the Commissioners Court's rate consultant and adopted by the court at a later date."

After entry of this order, Suburban continued to charge residential rates in excess of those set by the order. On July 22, 1976 Suburban filed a schedule of its rates with the Public Utility Commission of Texas, which, under the Public Utility Regulatory Act (PURA), assumed statewide jurisdiction of public utility rates and services effective September 1, 1976. Tex.Rev.Civ.Stat.Ann. art. 1446c, § 87 (Supp.1976–1977); Acts 64th Leg., 1975, ch. 721, p. 2327.

This action was instituted on September 10, 1976 by the attorney general acting on the request of the Public Utility Commission. In its original petition the State sought to enjoin Suburban from terminating water and sewer services to customers in Castlewood Subdivision, pending a ruling by the Public Utility Commission as to whether the rates charged were legal, and sought to recover civil penalties under Article 2372q–1. In its amended petition, the State alleged that the commissioners court on April 23, 1976 set water rates for Suburban as shown by a supplemental exhibit dated August 12, 1976 "30% higher than that of the City of Houston outside the city limits, but not to exceed an 8% profit as provided by the law on the investments of the company." The State asked for a temporary injunction enjoining Suburban from charging rates for water service in excess of those authorized by commissioners court, from terminating or interfering with water service being furnished to its customers pending the determination of the commission as to whether the rates were valid, and compelling Suburban to reconnect water services terminated subsequent to July 1, 1976. The State also sought civil penalties, a refund to Suburban's customers, and a permanent injunction restraining Suburban from terminating water service pending the commission's determination as to the legality of the rates charged.

After a nonjury trial, the trial court entered a final judgment dated November 2, 1976 enjoining Suburban from charging rates for water service to its customers in Castlewood Subdivision for the period April 3, 1976 through August 31, 1976 in excess of those authorized by commissioners court and from disrupting, terminating or otherwise interfering with its customers' water service for failure to make payment so long as the customers paid water rates as set by the commissioners court.

Suburban appeals from that portion of the judgment which grants an injunction and assesses costs against it, and the State appeals from that portion of the judgment which limits the commissioners court order to the period of time specified.

In its first point of error Suburban contends that Article 2372q–1 was unconstitutional and void because:

(1) The subject of the bill was not expressed in its title as required by Tex. Const. art. III, § 35;

(2) The Act was a local or special law in violation of Tex.Const. art. III, § 56;

(3) The Act contained arbitrary and discriminatory classifications with respect to the entities to be regulated as prohibited by Tex.Const. art. I, § 3, 19 and the 14th amendment to the Federal Constitution;

(4) The Act constituted an unconstitutional delegation of legislative power;

(5) The regulation of rates of a utility is a legislative function and not county business as that term is used in Tex. Const. art. 5, § 18, and the commissioners court, therefore, did not have such regulatory power conferred upon it; and

(6) The statutory provision limiting the rate or charge to a maximum of 8% per annum was confiscatory and a denial of due process of law.

In its last three points of error, Suburban charges that it was denied procedural due process at the rate hearing; that the commissioners court did not sustain its burden of offering evidence in support of rates prescribed by its order; that the order of the commissioners court was so vague, indefinite and uncertain as to be unenforceable; that the order is void because it did not set forth the reasons for the commissioners' determination; and that there had not been substantial compliance with the statutory prerequisites to the vesting of rate making power in the commissioners court.

Under the first point of error, only appellant's contention that Article 2372q–1 was unconstitutional as a special or local law needs discussion.

■ A statute is not local or special within the prohibition of the constitution, even though its enforcement may be confined to a restricted area, if persons or things throughout the state are affected thereby, or if it operates on a subject in which the

people at large are interested. *County of Cameron v. Wilson,* 160 Tex. 25, 326 S.W.2d 162 (1959); *Inman v. Railroad Comm'n,* 478 S.W.2d 124, 127 (Tex.Civ.App.–Austin 1972, writ ref'd n. r. e.).

It is the State's position that the statute in question did not merely regulate the local affairs of one county, but rather assigned duties to the county commissioners courts which were to be performed on behalf of the state. It contends that the classification by population was constitutional because there was a legitimate purpose to be served, i. e., in counties having 1,500,000 inhabitants there would have been commissioners courts capable of handling regulatory duties with respect to utility companies operating outside the cities' regulatory agencies.

█ The legislature has the constitutional power to classify on the basis of population, but the population bracket must bear a true relation to the subject and object of the act, and not merely be used as an arbitrary device to give a local law the appearance of being a general law. *Miller v. El Paso County,* 136 Tex. 370, 150 S.W.2d 1000 (1941); *Robinson v. Hill,* 507 S.W.2d 521, 526 (Tex.1974).

Suburban contends that Article 2372q–1, tested by these principles and considered in the light of the circumstances surrounding its enactment, was necessarily limited in its application to Harris County and that the statute was, therefore, unconstitutional. It argues that when population is used as a basis for classification the population bracket must be "open-ended" so that other local units may grow into the bracket as their populations increase. Suburban points out that at the time the statute was enacted, Harris County was the only county in the state with a population of more than 1,500,-000 inhabitants, according to the 1970 federal census, and that the metropolitan counties having population nearest in size to Harris County were Dallas with approximately 1,327,000, Bexar with approximately 830,000, and Tarrant with approximately 716,000.

█ The fact that a statute may have application to only one county at the time of its passage does not compel a determination that it is a special or local law if it is framed so as to apply to other counties in the future. *Bexar County v. Tynan,* 128 Tex. 223, 97 S.W.2d 467 (1936). However, when population is used as a basis for classification, the population bracket must not be based on existing circumstances only, and other local units of the state should be able to come within the application of the act upon meeting the qualifications of the population bracket. See Population Bills in Texas, 28 Texas L.Rev. 829, 835 (1950). The statute is unconstitutional as a special or local law if at the time of its enactment, the classification by population is based entirely upon existing circumstances and the application of the statute is "closed" to other local units in the future. *Fort Worth v. Bobbitt,* 121 Tex. 14, 36 S.W.2d 470, aff'd on rehearing, 121 Tex. 22, 41 S.W.2d 228 (1931).

It is appropriate to examine the statute's legislative history. Article 2372q–1 was introduced in the House by representatives from Harris County, and it was originally entitled "An Act Relating to the Regulation of Certain Water Companies in *Harris County . . . .*" It was passed in the House on the local and uncontested calendar. The language of the bill was changed in the Senate by a senator from Harris County so that the words "Harris County" were deleted and the words "certain counties" were substituted in their place. In another place in the bill, the words "having a population of more than 1,500,000" were substituted for the words "Harris County."

The same legislature which enacted Article 2372q–1, effective September 1, 1975, repealed that statute by its enactment of Article 1446c, effective September 1, 1976, which vested regulatory jurisdiction in the Public Utility Commission.

In *State v. Hall,* 76 S.W.2d 880, 884 (Tex. Civ.App.–Galveston 1934, writ dism'd), a statute limited in application to counties with a population in excess of 350,000 inhabitants according to the last federal cen-

sus, and limited in life to a period of two years after the date of its passage, was held to be unconstitutional since only Harris County could be affected by the provisions of the statute, even though the act purported to be general in its scope. See also *Mading's Drug Stores v. Blanton,* 78 S.W.2d 1036 (Tex.Civ.App.–Galveston 1934, writ dism'd).

It is Suburban's position that since the. legislature repealed Article 2372q–1 effective September 1, 1976, the statute's classification by population was limited to a single year's duration and, thus, could apply only to Harris County and was closed to all other units in the future.

The State contends, on the other hand, that it cannot be assumed that at the time of the enactment of Article 2372q–1, the legislature knew that Article 1446c would also be enacted during the session, because there was so much controversy surrounding the passage of the latter act.

██ Acts of the same session of the legislature should be construed together as if embodied in a single act. *Martin v. Sheppard,* 145 Tex. 639, 201 S.W.2d 810 (1947). Since Article 2372q–1 was repealed effective September 1, 1976, by the provision of the subsequently enacted Article 1446c, it must be considered the legislature intended to limit the life of Article 2372q–1 to a period of one year.

██ There exists a presumption in favor of the validity and constitutionality of a statute duly enacted by the legislature. *Duncan v. Gabler,* 147 Tex. 229, 215 S.W.2d 155, 158 (1948). However, it clearly appears that Article 2372q–1 was at the time of its enactment a local or special law, limited in its application to Harris County for the one year period of its duration, and that it, therefore, must be declared unconstitutional. Tex.Const. art. III, § 56; *Fort Worth v. Bobbitt,* 121 Tex. 14, 36 S.W.2d 470, aff'd on rehearing, 121 Tex. 22, 41 S.W.2d 228 (1931); 28 Texas L.Rev. 829.

In view of this Court's ruling that the statute was unconstitutional as a local or special law, it becomes unnecessary to consider the other grounds asserted by Suburban as to the constitutionality of the statute or its subsequent points directed at the validity of the commissioners court's order.

The judgment of the trial court is reversed and judgment is rendered that Article 2372q–1 was unconstitutional and did not, therefore, vest power in the commissioners court to regulate Suburban's rates.