TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00174-CV






Juliff Gardens, L.L.C., Appellant


v.


Texas Commission on Environmental Quality, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN203008, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING





O P I N I O N




 Appellant Juliff Gardens, L.L.C. (Juliff) appeals from a district-court judgment in
favor of the Texas Commission on Environmental Quality (the Commission). While Juliff had an
application to build a landfill in Brazoria County pending before the Commission, the legislature
enacted H.B. 2912, a portion of which is codified as section 361.122 of the Texas Health and Safety
Code. (1) The provisions of section 361.122 mandated that Juliff's application be denied. As a result,
Juliff amended its application to avoid section 361.122 and subsequently brought this declaratory-judgment action seeking a determination that section 361.122 was an unconstitutional local or
special law. The district court granted the Commission's motion to dismiss, ruling that the
Commission had exclusive or primary jurisdiction to determine the applicability of the statute before
Juliff could challenge its constitutionality. In the alternative, the district court granted the
Commission's summary-judgment motion, ruling that section 361.122 was not a local or special law.

 Juliff now argues that the district court's grant of the Commission's motion to dismiss
was improper because Juliff was not required to exhaust its administrative remedies. Juliff also
argues that, because the district court determined it was without jurisdiction to entertain Juliff's
claim, the grant of summary judgment was an improper advisory opinion. In the alternative, Juliff
argues that summary judgment was improper because section 361.122 of the health and safety code
is a local or special law. We will reverse the decision of the district court granting the Commission's
motion to dismiss, but we will affirm the grant of summary judgment to the Commission.


BACKGROUND AND PROCEDURE


 In 1999, Juliff applied to the Commission for a permit to build and operate a landfill
in Brazoria County to dispose of Type IV waste, which includes "brush, construction-demolition
waste, and/or rubbish that are free of putrescible and free of household wastes." 30 Tex. Admin.
Code § 330.41(e) (2003). On April 17, 2000, the Brazoria County Commissioners Court adopted
a resolution opposing Juliff's proposed landfill. On November 14, 2000, after the Commission had
declared the permit administratively and technically complete, it made a preliminary decision
recommending issuance of the permit.

 In 2001, while Juliff's permit was still pending, the legislature passed H.B. 2912, (2)
which included a provision that became section 361.122 of the Texas Health and Safety Code and
provides:


The commission may not issue a permit for a Type IV landfill if:


(1) the proposed site is located within 100 feet of a canal that is used as a public
drinking water source or for irrigation of crops used for human or animal
consumption;


(2) the proposed site is located in a county with a population of more than 225,000
that is located adjacent to the Gulf of Mexico; and


(3) prior to final consideration of the application by the commission, the
commissioners of the county in which the facility is located have adopted a
resolution recommending denial of the application.


Tex. Health & Safety Code Ann. § 361.122 (West Supp. 2004). Because each of section 361.122's
provisions applied to Juliff's proposed landfill, Juliff chose to amend its permit application to move
the eastern boundary of its proposed landfill to a point more than 100 feet from a privately owned
irrigation canal on the site, thereby avoiding the application of section 361.122. Following Juliff's
amendment, opponents of the landfill argued that a separate topographical feature on the proposed
site was a "canal" for purposes of section 361.122. (3) Juliff requested a contested-case hearing on the
merits of its application, and the Commission referred the matter to the State Office of
Administrative Hearings (SOAH). See Tex. Water Code Ann. § 5.557(a) (West Supp. 2004).

 On August 22, 2002, Juliff filed suit in Travis County district court challenging
section 361.122 as an unconstitutional local or special law. See Tex. Const. art. III, § 56. Although
SOAH had previously decided to conduct "a limited evidentiary hearing to make fact findings
[regarding the draw] necessary for determining whether summary disposition [of Juliff's application]
might be appropriate under Section 361.122," the SOAH Administrative Law Judges (ALJs) granted
Juliff's motion to abate the contested-case hearing on October 8, 2002. In granting Juliff's motion
to abate, SOAH stated:


The ALJs are not convinced that the district court's consideration of the legal
arguments presented regarding the constitutionality of Tex. Health & Safety Code
§ 361.122 is dependent on the fact findings to be made in this administrative
proceeding. Under such circumstance, the ALJs see little reason to move forward
and expend the resources of the parties and the State if the statute in question may
ultimately be found to be unconstitutional and unenforceable.


 In the Travis County district court, the Commission filed a motion to dismiss or,
alternatively, to abate the proceeding. The Commission argued that it had exclusive jurisdiction or,
in the alternative, primary jurisdiction to determine the proper characterization of the draw before
the district court could examine the constitutionality of section 361.122. Juliff and the Commission
also filed motions for summary judgment, presenting competing arguments as to the constitutionality
of section 361.122. The district court granted the Commission's motion to dismiss and, in the
alternative, granted summary judgment to the Commission and denied summary judgment to Juliff. 
This appeal followed.


DISCUSSION


Motion to Dismiss

 Juliff claims the district court's grant of the Commission's plea to the jurisdiction was
improper because the Commission had neither exclusive nor primary jurisdiction to determine the
characterization of the draw before the district court could examine the constitutionality of section
361.122. In order to determine the propriety of the district court's dismissal, we will first determine
whether a justiciable controversy existed to enable the district court to entertain Juliff's declaratory-judgment action. If so, we will then determine the validity of the Commission's arguments of
exclusive or primary jurisdiction.


Jurisdiction in declaratory-judgment action

 Whether a trial court has subject-matter jurisdiction is a question of law we review
de novo. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Friends of Canyon
Lake, Inc. v. Guadalupe-Blanco River Auth., 96 S.W.3d 519, 525 (Tex. App.--Austin 2002, pet.
denied). When reviewing a trial-court order dismissing a cause for want of jurisdiction, we construe
the pleadings in favor of the plaintiff and look to the pleader's intent. Texas Ass'n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).

 Juliff argues that the district court had jurisdiction to entertain its declaratory-judgment action, the purpose of which is "to settle and to afford relief from uncertainty and
insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed
and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). However, the
Uniform Declaratory Judgments Act (UDJA) does not confer jurisdiction on a trial court but makes
declaratory judgment available as a remedy for a cause of action already within the court's
jurisdiction. Chenault v. Phillips, 914 S.W.2d 140, 141 (Tex. 1996); Reynolds v. Reynolds, 86
S.W.3d 272, 276 (Tex. App.--Austin 2002, no pet.). The UDJA provides:


A person interested under a deed, will, written contract, or other writings constituting
a contract or whose rights, status, or other legal relations are affected by a statute,
municipal ordinance, contract, or franchise may have determined any question of
construction or validity arising under the instrument, statute, ordinance, contract, or
franchise and obtain a declaration of rights, status, or other legal relations thereunder.



Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997) (emphasis added). A suit under the
UDJA is not confined to cases in which the parties have a cause of action apart from the UDJA itself,
but a declaratory judgment is appropriate only if (1) a justiciable controversy exists as to the rights
and status of the parties, and (2) the controversy will be resolved by the declaration sought. Texas
Dep't of Pub. Safety v. Moore, 985 S.W.2d 149, 153 (Tex. App.--Austin 1998, no pet.).

 A justiciable controversy need not be a fully ripened cause of action in order to confer
jurisdiction upon a court. Reynolds, 86 S.W.3d at 276 (citing Moore, 985 S.W.2d at 153). Here,
Juliff argues that an actual controversy exists or the "ripening seeds" of one exist. See, e.g., id.; City
of Austin v. City of Cedar Park, 953 S.W.2d 424, 430-31 (Tex. App.--Austin 1997, no writ). To
confer jurisdiction, the fact situation must manifest the "'ripening seeds of a controversy' . . . even
though the differences between the parties as to their legal rights have not reached the state of an
actual controversy." See Moore, 985 S.W.2d at 153-54 (quoting Ainsworth v. Oil City Brass Works,
271 S.W.2d 754, 760 (Tex. Civ. App.--Beaumont 1954, no writ)). Stated differently, in determining
ripeness a court should consider (1) the fitness of the issues for judicial review, and (2) the hardship
occasioned to a party by the court's denying judicial review. Perry v. Del Rio, 66 S.W.3d 239, 250
(Tex. 2001); Atmos Energy Corp. v. Abbott, No. 03-03-00105-CV, slip op. at 8, 2004 Tex. App.
LEXIS 777, at *12 (Tex. App.--Austin Jan. 29, 2004, no pet. h.).

 The Commission argues that whether there is, in fact, a justiciable controversy is
dependent on the Commission's determination of the proper characterization of the draw. However,
this determination affects only the applicability of section 361.122 to Juliff's amended application;
it does not affect the substantive constitutionality of the underlying statute. Juliff claimed in its
petition to the district court that "the protestants' position forces Juliff to contend with this
unconstitutional law as a central issue in the application process, imposes added expense and burden
on Juliff, and introduces the possibility that adverse action will be taken on its application based on
the unconstitutional [section 361.122]." In fact, Juliff has incurred the burden of amending its permit
application once in order to avoid the application of section 361.122 and has also been confronted
with the time and expense of pursuing a contested-case hearing before SOAH, based largely on the
potential summary disposition under section 361.122.

 Furthermore, the only purpose for the Commission pursuing a determination of the
proper characterization of the draw is to decide the applicability of section 361.122. If Juliff
succeeds in obtaining a declaration that section 361.122 is unconstitutional, the controversy
regarding its application will be resolved and a determination of the proper characterization of the
draw will be unnecessary. See Moore, 985 S.W.2d at 153. Moreover, the determination of the
constitutionality of a statute is unquestionably an issue fit for judicial review--the Commission
admits it has no authority to determine the constitutionality of a statute--and refusing to entertain
Juliff's request for declaratory relief would require Juliff to expend resources in defending its permit
application against a statute that may, as the ALJs recognized, ultimately be found to be
unconstitutional and unenforceable. See Perry, 66 S.W.3d at 250. Because the tests for ripeness
under both Moore and Perry have been met, we hold that Juliff has shown that the district court had
jurisdiction absent the Commission's claims of exclusive or primary jurisdiction, to which we now
turn.


Exclusive or primary jurisdiction

 The Commission contends that it has exclusive jurisdiction or, in the alternative,
primary jurisdiction to determine the proper characterization of the draw before the district court can
examine the constitutionality of section 361.122. Primary jurisdiction is prudential whereas
exclusive jurisdiction is jurisdictional. Subaru of Am., Inc. v. David McDavid Nissan, 84 S.W.3d
212, 220 (Tex. 2002). The supreme court explained the difference as follows:


 The judicially-created primary jurisdiction doctrine operates to allocate power
between courts and agencies when both have authority to make initial determinations
in a dispute. Trial courts should allow an administrative agency to initially decide
an issue when: (1) an agency is typically staffed with experts trained in handling the
complex problems in the agency's purview; and (2) great benefit is derived from an
agency's uniformly interpreting its laws, rules, and regulations, whereas courts and
juries may reach different results under similar fact situations.


. . . .


 Conversely, under the exclusive jurisdiction doctrine, the Legislature grants
an administrative agency the sole authority to make an initial determination in a
dispute. An agency has exclusive jurisdiction "when a pervasive regulatory scheme
indicates that Congress intended for the regulatory process to be the exclusive means
of remedying the problem to which the regulation is addressed." Whether an agency
has exclusive jurisdiction depends on statutory interpretation.



Id. at 221 (citations omitted); see also Cash Am. Int'l Inc. v. Bennett, 35 S.W.3d 12, 15-18 (Tex.
2000).

 The Commission argues that permitting under the Texas Solid Waste Disposal Act,
see Tex. Health & Safety Code Ann. §§ 361.001-.808 (West 2001 & Supp. 2004), is an
administrative function committed exclusively to the Commission. See Gerst v. Nixon, 411 S.W.2d
350, 354 (Tex. 1966); Smith v. Houston Chemical Servs., Inc., 872 S.W.2d 252, 258 (Tex.
App.--Austin 1994, writ denied); see also Hooks v. Texas Dep't of Water Res., 645 S.W.2d 874, 880
(Tex. App.--Austin 1983, writ ref'd n.r.e.) ("The responsibility for applying the relevant statutory
provisions to the facts of a particular case is given in the first instance to the Commission.").

 The Commission's reliance on exclusive and primary jurisdiction is misplaced. In
order for either exclusive or primary jurisdiction to apply, the Commission must have authority to
determine the controversy at issue. See Subaru, 84 S.W.3d at 221. Although the legislature has
empowered the Commission with the permitting function, Juliff's claim regards the constitutionality
of section 361.122 and does not affect the Commission's administrative role. (4) Although the
Commission's staff is trained in dealing with permitting matters, it is not empowered to determine
the constitutionality of statutes. Similarly, concerns for uniformity are not implicated because the
issue here involves a determination of the constitutionality of a statute and in no way implicates the
Commission's permitting process or the application of a Commission rule or regulation. See id. 
Here, the Commission has no statutory authority to determine the constitutionality of section
361.122, and a constitutional determination by the district court does not infringe on the
Commission's permitting power.

 The Commission also cites Texas Education Agency v. Cypress-Fairbanks
Independent School District, 830 S.W.2d 88 (Tex. 1992), for the proposition that plaintiffs must
exhaust administrative remedies, even before bringing claims based on constitutional or federal
statutory grounds. In Cypress-Fairbanks, school teachers appealed to the Commissioner of
Education following adverse employment decisions. Id. at 89. Cypress-Fairbanks sought injunctive
relief regarding the standard of review to be applied by the Commissioner of Education. Id. at 90. 
In affirming the district court's dismissal of Cypress-Fairbanks's suit for want of jurisdiction, the
supreme court stated that a district court can correct agency error only after exhaustion of
administrative remedies. Id. With regard to the constitutional and federal statutory claims also
raised by the teachers, the supreme court stated that "[t]he Commissioner is within his authority to
consider the employees' claims at least for some purposes, even if he cannot finally adjudicate them
or grant full relief." Id. at 91. Because the supreme court reasoned that the Commissioner could
"consider whether the school districts' actions were invalid because they violated federal law," it
affirmed the district court's dismissal for want of jurisdiction. Id.

 The facts at hand are easily distinguishable from those in Cypress-Fairbanks. An
administrative agency may exercise only those powers the law, in clear and express statutory
language, confers upon it. Subaru, 84 S.W.3d at 220. In Cypress-Fairbanks, the Commissioner of
Education was empowered to at least consider whether the actions complained of by the teachers
were unconstitutional or violated federal statutes. Here, the Commission has no power, either
express or implied, to determine the constitutionality of statutes.

 "Where [an] issue is one inherently judicial in nature . . . , the courts are not ousted
from jurisdiction unless the legislature, by a valid statute, has explicitly granted exclusive
jurisdiction to the administrative body." Gregg v. Delhi-Taylor Oil Corp., 344 S.W.2d 411, 415
(Tex. 1961). No such grant of exclusive power exists here, and the Commission admits it is not
claiming jurisdiction to determine the constitutionality of section 361.122. Regarding primary
jurisdiction, although the Commission is empowered to consider the factual underpinnings of Juliff's
application, this in no way affects the district court's ability to determine the constitutionality of
section 361.122, a function the Commission admits it cannot perform. We find that the Commission
has neither exclusive nor primary jurisdiction to determine the constitutionality of section 361.122
and that Juliff was not required to allow the Commission to ultimately determine the applicability
of section 361.122 before challenging the statute's constitutionality. We therefore hold that the
district court erred in granting the Commission's motion to dismiss.


Motion for Summary Judgment

Propriety of ruling on merits of motions for summary judgment

 Juliff next argues that, because the district court determined it was without
jurisdiction to entertain Juliff's claim, the grant of summary judgment was an improper advisory
opinion. See Tex. Const. art. II, § 1; Texas Ass'n of Bus., 852 S.W.2d at 444 (separation-of-powers
doctrine prohibits courts from issuing advisory opinions). To support this argument, Juliff cites
numerous cases for the proposition that a trial court should refrain from ruling on the merits of the
case when it lacks jurisdiction. See, e.g., Subaru, 84 S.W.3d at 221; Attorney Gen. v. Sailer, 871
S.W.2d 257, 258 (Tex. App.--Houston [14th Dist.] 1994, writ denied).

 This proposition is not applicable to the situation before us. The district court's
determination that it did not have jurisdiction was in error, and the structure of the district court's
final judgment indicates that the district court intended that its summary-judgment ruling be effective
should its jurisdictional ruling be reversed. (5) The district court granted the Commission's motion to
dismiss by stating, "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that all of the
Plaintiff's claims are DISMISSED and all requested relief not expressly granted is denied without
prejudice." This was immediately followed by, "ALTERNATIVELY, IT IS ORDERED,
ADJUDGED, AND DECREED that: . . . The Plaintiff's Motion for Summary Judgment is DENIED,
[and] that the Defendants' Cross-Motion for Summary Judgment is GRANTED." Because the
district court had jurisdiction to rule on the competing motions for summary judgment--despite its
alternative jurisdictional ruling to the contrary--and because the issue before the court was ripe for
review, we hold that the district court's decision to reach the merits of the competing motions for
summary judgment was not in error and that the decision was not an advisory opinion. (6) We turn now
to the validity of the district court's summary-judgment decision.


Merits of district court's summary-judgment ruling

 Juliff argues that the district court erred in granting the Commission's motion for
summary judgment and denying its own motion because section 361.122 of the Texas Health and
Safety Code is, in fact, a local or special law in violation of the Texas Constitution. See Tex. Const.
art. III, § 56. When both parties move for summary judgment, each party must carry its own burden
as the movant. Guynes v. Galveston County, 861 S.W.2d 861, 862 (Tex. 1993); Jun v. Lloyds &
Other Various Insurers, 37 S.W.3d 59, 62 (Tex. App.--Austin 2000, pet. denied). When the district
court grants one party's motion and denies the other's, the reviewing court should determine all
questions presented and render the judgment that the court below should have rendered. 
Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); City of Fort Worth v. Cornyn, 86
S.W.3d 320, 322 (Tex. App.--Austin 2002, no pet.). The propriety of summary judgment is a
question of law; therefore, we review the trial court's decision de novo. Texas Dep't of Ins. v.
American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.); see
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). In the competing motions for summary
judgment before us now, the Commission and Juliff argue opposite sides of the same issue: whether
section 361.122 is an unconstitutional local or special law.

 The Texas Constitution enumerates thirty instances where the legislature may not
authorize a local or special law. Tex. Const. art. III, § 56(a)(1)-(30). The Texas Constitution then
states: "In addition to those laws described by Subsection (a) of this section in all other cases where
a general law can be made applicable, no local or special law shall be enacted . . . ." Id. § 56(b).

 A local law is one limited to a specific geographic region of the state, while a special
law is limited to a particular class of persons distinguished by some characteristic other than
geography. Maple Run at Austin Mun. Util. Dist. v. Monaghan, 931 S.W.2d 941, 945 (Tex. 1996). 
However, a law is not a prohibited local law merely because it applies only in a limited geographical
area. Id. The supreme court recognized the legislature's broad authority to make classifications for
legislative purposes. Id.; see Miller v. El Paso County, 150 S.W.2d 1000, 1001 (Tex. 1941). 
However, where a law is limited to a particular class or affects only the inhabitants of a particular
locality, "the classification must be broad enough to include a substantial class and must be based
on characteristics legitimately distinguishing such class from others with respect to the public
purpose sought to be accomplished by the proposed legislation." Maple Run, 931 S.W.2d at 945
(citing Miller, 150 S.W.2d at 1001-02). "The primary and ultimate test of whether a law is general
or special is whether there is a reasonable basis for the classification made by the law, and whether
the law operates equally on all within the class." Id. (quoting Rodriguez v. Gonzales, 227 S.W.2d
791, 793 (Tex. 1950)); Miller, 150 S.W.2d at 1001-02.

 In determining the constitutionality of a statute, we begin with a presumption of
validity. Smith v. Davis, 426 S.W.2d 827, 831 (Tex. 1968). We presume that the legislature has not
acted unreasonably or arbitrarily, and a mere difference of opinion, where reasonable minds could
differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. Id. "There
is a strong presumption that a legislature understands and correctly appreciates the needs of its own
people, that its laws are directed to problems made manifest by experience, and that its
discriminations are based upon adequate grounds." Texas Nat'l Guard Armory Bd. v. McCraw, 126
S.W.2d 627, 634 (Tex. 1939).

 Here, the Commission and Juliff have presented competing arguments as to the
constitutionality of section 361.122, and both parties rely on this section's legislative history. In
2001, the legislature considered H.B. 2912, which addressed sunset issues for the Commission and
amended both the water code and the health and safety code. See Act of May 28, 2001, 77th Leg.,
R.S., ch. 965, §§ 1.01-20.03, 2001 Tex. Gen. Laws 1933, 1933-91. The general manager of the
Lower Neches Valley Authority informed Senator Bernsen's staff that the Lower Neches Valley
Authority cancelled plans to construct a water treatment plant near an irrigation canal in Senator
Bernsen's district when it learned that leachate from a nearby abandoned landfill threatened to
contaminate the canal. Senator Bernsen subsequently introduced an amendment to H.B. 2912 that
would prohibit the Commission from issuing a permit to certain types of landfills "within 2,500 feet
of a freshwater reservoir, canal, or other surface water conveyance system that reasonably may be
used to transport fresh water for agricultural, domestic, or drinking purposes in counties in which
the County Commissioner's Court has voted unanimously to oppose the facility."

 Senator Bernsen's amendment was discussed by the Senate Committee on Natural
Resources. Representatives from the Commission informed Senator Brown, the chairman of the
committee, that Senator Bernsen's amendment would "make it difficult for applicants to find and
acquire permissable [sic] locations for new landfills in East Texas." Senator Brown eventually
proposed his own amendment that was narrower than Senator Bernsen's: it was limited to Type IV
landfills in populous coastal counties, reduced the setback from 2,500 feet to 100 feet, and applied
only to landfills near canals and not other waterways. Senator Brown's amendment was considered
and adopted by the legislature as part of H.B. 2912. See id. § 9.08, 2001 Tex. Gen. Laws 1933, 1968
(codified at Tex. Health & Safety Code Ann. § 361.122 (West Supp. 2004)).

 Both parties discuss the legislative history of H.B. 2912 in their arguments concerning
the constitutionality of section 361.122. (7) Juliff argues that section 361.122 is a local or special law
because it specifically targets Juliff's landfill, and the fact that it could apply to future landfills is a
legislative effort to disguise the true intent of the statute. See Miller, 150 S.W.2d at 1002
(classification "must not be a mere arbitrary device resorted to for the purpose of giving what is, in
fact, a local law, the appearance of a general law"). Specifically, Juliff points to excerpts from a
Senate floor discussion between Senator Brown and Senator Barrientos as evidence that Brown was
attempting to specifically "target" the Juliff landfill. However, a review of the transcript of the
Senate floor discussion indicates otherwise:


Brown: Thank you, Chair, Members. This amendment is a very narrowly
drawn amendment that Senator Bernsen and I have been working on,
and it was discussed in committee and then left pending in committee,
so that it could be properly--it could be redrawn. This applies--the
language is targeted to affect the [Commission's] ability to issue a
permit for a landfill . . . . This, this is in regard to a proposed landfill
that the Houston/Galveston Area Council is opposed to that the
Brazoria County Commissioners are opposed to by resolution. It would
be the tallest structure in Brazoria County, and the applicant has a bad
business history.


* * * *


Barrientos: Senator, this looks like a good amendment. Just one question on your
Item No. 2, permit not be issued if the proposed site is located within
100 feet of a canal that is used as a public drinking water source. So if
it was 101 feet it could be given, right?


Brown: Well, it's not, the converse is not true. It doesn't say, if it is 101 you
must approve it. It just says, they cannot approve it if it's within 100.


Barrientos: But technically . . .


Brown: It's got to have those other provisions too.


Barrientos: What other provisions?


Brown: Well, that follow. And it must be in a county that's situated adjacent
to the Gulf of Mexico, of a population of more than 225[,000], and . . .


Barrientos: Okay, so you're trying to specify a certain . . .


Brown: . . . target . . .


Barrientos: Ok that's fine. I just thought I'd point that out to you. That's like from
here to me to you how far that landfill would be, technically?


Brown: That's about just a long put[t], Senator.


Barrientos: Just thought I'd . . . It's a nice quail shot, too.


Chair: Senator Harris on the amendment?


Harris: It's acceptable, Mr. President.


Chair: Senator Brown sends up Floor Amendment No. 24 and moves its
adoption. It is acceptable to Senator Harris. Is there objection to the
adoption of the Amendment? Chair hears none. The amendment is
adopted.



 Juliff argues that this discussion is evidence that section 361.122 is a local or special
law because it was specifically targeted at Juliff's landfill. Although Brown stated that the
amendment was "in response" to Juliff's proposed landfill, the mere fact that issues in Senator
Bernsen's district and in Senator Brown's district were precipitating causes of what became section
361.122 does not render it a local or special law. (8) When reviewing a statute to determine whether
it is an unconstitutional local or special law, we review the reasonableness of the statute's
classifications, see Maple Run, 931 S.W.2d at 945, not the precipitating forces that led to its
enactment. Specific events have led to numerous statutes that were enacted as laws of general
applicability. See, e.g., Tex. Gov't Code Ann. §§ 411.351-.358 (West Supp. 2004) (Statewide
America's Missing: Broadcast Emergency Response (AMBER) Alert System for Abducted
Children); 18 U.S.C.A. § 921-31 (West 2000 & Supp. 2003) (Brady Handgun Violence Prevention
Act). The mere fact that Juliff's proposed landfill, and the subsequent community opposition to the
landfill, may have spurred Senator Brown to sponsor the amendment that became section 361.122
does not render this section a prohibited local or special law.

 Juliff also argues that the classifications in section 361.122 are not reasonable because
limitations on the Commission's ability to approve landfill applications should apply statewide. 
Specifically, Juliff argues the classifications are unreasonable because they apply to (1) Type IV
landfills, not Type I landfills; (2) populous counties, not all counties; (3) coastal counties, not all
counties; (4) canals, not other waterways; and (5) counties in which the commissioners have adopted
a resolution opposing the landfill, not all counties.

 The Commission responds that section 361.122 is a law of general applicability that,
through reasonable geographic classifications, creates an open class and applies to five populous
counties that are adjacent to the Gulf of Mexico. The Commission responds to Juliff's arguments
by reasoning that, because Type IV landfills are less regulated and subject to less-stringent
requirements than Type I landfills, a particularized statute directed at Type IV landfills is justified. 
Second, the Commission argues that it is reasonable to focus on populous counties because landfills
are situated close to population centers. Third, the Commission justifies distinguishing coastal
counties because (i) coastal counties contain vital habitats for aquatic resources that support
commercial and recreational fishing; (ii) landfills in coastal counties are close to these sensitive
habitats, whereas pollutants from non-coastal counties will be "diluted and attenuated" if they reach
these sensitive habits at all; (iii) unlike other counties, coastal counties are susceptible to a wide
variety of geological and climatic conditions, such as hurricanes, tidal surges, erosion, active surface
faulting, and subsidence, thereby justifying geographically targeted regulation; (iv) coastal counties
are positioned over a shallow aquifer that is a "large, leaky artesian aquifer system" and are therefore
particularly vulnerable to landfill waste; and (v) both the legislature and case law support the
proposition that protecting and promoting aquatic, natural, and recreational resources in coastal
counties is a matter of statewide interest. See Tex. Water Code Ann. §§ 5.602-.603 (West Supp.
2004); County of Cameron v. Wilson, 326 S.W.2d 162, 166 (Tex. 1959); Stephenson v. Wood, 34
S.W.2d 246, 248-49 (Tex. 1931). Fourth, the Commission argues that the hydrological differences
between canals and other waterways make canals particularly susceptible to pollution from landfills. 
Unlike streams or rivers, into which tributaries continually add water, canals are characterized by
low pressure, low flow, and low circulation, and are isolated systems that are open at one end and
closed elsewhere. The Commission argues that these differences affect the ability of water in canals
to withstand and recover from the effects of pollution. Finally, the Commission argues that, because
counties are partners in the regulatory process, it is reasonable for the legislature to afford
commissioners courts a voice in whether a landfill application should be granted.

 We find that the Commission's justifications for the classifications within section
361.122 are reasonable, and although Juliff has presented arguments attempting to rebut some of the
Commission's justifications, Juliff's arguments are insufficient to overcome the presumption of
validity. See Davis, 426 S.W.2d at 831 (mere difference of opinion, where reasonable minds could
differ, is not sufficient basis for striking down legislation as arbitrary or unreasonable). We agree
with the Commission that, because the classifications within the section are reasonable, and because
the law operates equally on all within the class, section 361.122 is not a prohibited local law. See
Maple Run, 931 S.W.2d at 945; Miller, 150 S.W.2d at 1001-02. We hold that section 361.122 is not
a prohibited local or special law, and therefore affirm the district court's grant of the Commission's
motion for summary judgment and its denial of Juliff's motion for summary judgment.

CONCLUSION


 Because the Commission had neither exclusive nor primary jurisdiction to consider
the constitutionality of section 361.122, and because Juliff has shown a justiciable controversy exists
that is sufficient to invoke the jurisdiction of the district court, we reverse the district court's
dismissal of the cause. The district court had jurisdiction to consider the merits of the competing
motions for summary judgment. We therefore overrule Juliff's contention that the district court's
grant of summary judgment to the Commission was an impermissible advisory opinion. Finally,
because section 361.122 of the Texas Health and Safety Code is not an impermissible local or special
law, we affirm the district court's grant of the Commission's motion for summary judgment and its
denial of Juliff's motion for summary judgment.



 

 Mack Kidd, Justice

Before Justices Kidd, Puryear and Pemberton

Affirmed in Part; Reversed in Part

Filed: March 4, 2004

1. See Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 9.08, 2001 Tex. Gen. Laws 1933,
1968 (codified at Tex. Health & Safety Code Ann. § 361.122 (West Supp. 2004)).
2. See id. §§ 1.01-20.03, 2001 Tex. Gen. Laws 1933, 1933-91.
3. Although Juliff refers to this topographical feature as a "ditch," the Commission has made
no final determination as to whether this feature should be characterized as a "ditch" or as a "canal." 
Because we express no opinion as to its proper characterization, we will use the alternative term
"draw" when discussing this topographical feature.
4. Juliff's request for declaratory relief concerns only the constitutionality of section 361.122
and does not ask the district court to make any determination regarding the proper characterization
of the draw.
5. Although the procedural posture of this case is somewhat unusual, it is not unique. See,
e.g., Camarena v. Texas Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988) (trial court ruled
sovereign immunity barred award of attorney's fees and, in the alternative, determined specific
amount of attorney's fees it would have awarded); Cozby v. City of Waco, 110 S.W.3d 32, 34 (Tex.
App.--Waco 2002, no pet.) (trial court granted plea to the jurisdiction and, "in the alternative,"
motion for summary judgment); Texas Gen. Indem. Co. v. Texas Workers' Comp. Comm'n, 36
S.W.3d 635, 639 (Tex. App.--Austin 2000, no pet.) (following dismissal for lack of jurisdiction,
trial court conditionally ruled on merits of competing motions for summary judgment "in the event
it was held to be in error for dismissing the cause"). Because this is a declaratory-judgment action
involving a pure question of law--the determination of the constitutionality of a statute--we are
inclined to address the issue for purposes of judicial efficiency and economy.
6. Our decision is guided by Lone Star Gas Co. v. Railroad Commission, 767 S.W.2d 709,
710 (Tex. 1989), in which the supreme court directed the courts of appeals to "address every issue
raised and necessary to final disposition of the appeal," and, when reversing the judgment of a lower
court, "proceed to render such judgment or decree as the court below should have rendered, except
when it is necessary to remand to the court below for further proceedings." See also Tex. R. App.
P. 43.3, 47.1.
7. In determining whether a statute is a local or special law, it is appropriate to examine the
statute's legislative history. Suburban Util. Corp. v. State, 553 S.W.2d 396, 399 (Tex. Civ.
App.--Houston [1st Dist.] 1977, writ ref'd n.r.e.).
8. Although Juliff argues that Senator Brown's use of the word "target" in response to Senator
Barrientos's questions is evidence that Senator Brown's amendment was specifically directed at
Juliff's landfill, our review of the entire transcript leads us to believe that Senator Brown's use of
the word "target" referred to the specification of 100 feet, not Juliff's landfill.